OPINION
{¶ 1} Plaintiff-appellant Catina Hanselman appeals from a judgment and decree of divorce. She contends that the trial court erred by allocating parental rights and responsibilities in the final decree of divorce without according her the opportunity to be heard. We agree. Because both parties agreed that they are incompatible, that part of the judgment of the trial court ordering the parties divorced is Affirmed; the judgment of the trial court is Reversed in other respects; and this cause is Remanded for a hearing on the issue of the allocation of parental rights and responsibilities, and for any other and further proceedings that may become necessary or appropriate.
 I {¶ 2} Mrs. Hanselman and defendant-appellee Christopher Hanselman were married in 1989. They have two children: Jonathan Hanselman, born May 19, 1990, and Crystal Hanselman, born September 30, 1994. Mrs. Hanselman brought this action for divorce in November, 2004.
 {¶ 3} In October, 2005, with the divorce action pending, the parties, apparently as a result of mediation, entered into a Temporary Parenting Agreement, which provided for shared parenting, allocated parenting time, provided for summers and holidays, and included the following two provisions:
 {¶ 4} "8. The parents agree to return to mediation once mother moves to West Carrollton and/or attains different employment to address the parenting time schedule.
 {¶ 5} "10. The parents agree that this Temporary Parenting Agreement shall be based on a `good-faith agreement' until it is filed as a court order."
 {¶ 6} On January 19, 2006, the parties appeared before the trial court, with their counsel, and proceeded to read into the record the terms of what was evidently understood to have been their agreement with respect to the issues in the divorce. The trial court asked Matthew Barbato, Mrs. Hanselman's attorney, if he wanted to inquire of his client. The following colloquy occurred:
 {¶ 7} "MR. BARBATO: I need another moment, your Honor.
 {¶ 8} "Your Honor, even though I believe that everything has been read into the record is in the best interest of my client and the conversations that we had since about one-thirty this afternoon with yourself, with opposing counsel, and with my client, she is not willing to agree to the shared parenting plan that's been placed in front of us.
 {¶ 9} "I explained to her-
 {¶ 10} "THE COURT: No problem.
 {¶ 11} "Step right up, ma'am. Take that witness stand. Witness previously sworn, your witness."
 {¶ 12} Barbato then took his client through background information, the situation with the children, and then started to get into the history of the property. At a certain point, Bob Goelz, who represented Mr. Hanselman, interrupted:
 {¶ 13} "MR. GOELZ: Yeah, sure, I'll stipulate. Are we trying this from the beginning or just on custody? What are we doing?
 {¶ 14} "MR. BARBATO: Your Honor, I figured if we didn't have an agreement, that this case was on trial.
 {¶ 15} "THE COURT: Go ahead.
 {¶ 16} "MR. BARBATO: Thank you, your Honor.
 {¶ 17} "THE COURT: Sure. We'll get to the children issues quickly as we can. I think you stipulated the property values and the like, yes?"
 {¶ 18} The trial court then went through all the issues besides parenting, ascertaining that there was an agreement. The judge then went on:
 {¶ 19} "THE COURT: What's the issue with the children?
 {¶ 20} "PLAINTIFF [Mrs. Hanselman]: The children.
 {¶ 21} "THE COURT: What is it you want me to do with the children?
 {¶ 22} "PLAINTIFF: Your Honor, I miss my children. I was there for them from day one when they were born. And all of a sudden he lies and gets me kicked out of the house and I haven't spent much time with my children.
 {¶ 23} "My daughter called me on the first day of school, almost cried because she wanted me to be there to fix her hair. I don't get to spend any time with them for school, get them off or see them when they get home.
 {¶ 24} "THE COURT: You have an agreement, right?
 {¶ 25} "PLAINTIFF: That was just — I wasn't living in the area. They couldn't ride the bus to and from the house. I couldn't pick them up. I had to work.
 {¶ 26} "THE COURT: Right. The agreement is that if you relocated,which you've done, you go back to mediation, that's your agreement.
 {¶ 27} "PLAINTIFF: Yes, but I thought it was wrong. I thought maybe I'd be able to see them like every week or something. But from what I understand, they are saying I may not be able to get that.
 {¶ 28} "THE COURT: Well, I'm going to do — you guys made an agreement, the agreement calls to return for mediation. I'm going to enforce your agreement, you're going back to mediation.
 {¶ 29} "In the meantime the order is going to stay just exactly as it is now.
 {¶ 30} "That's what — if it is contested, what am I suppose [sic] to do. If you work it out and you have an agreement, I'm not going to stand in the way of that agreement. But if you don't have an agreement, you came to court, you had mediation, you made a deal. When called upon to enforce the deal, that's what I do, because you did it, I didn't do it.
 {¶ 31} "PLAINTIFF: I know. I just thought it would change once I got in the area. I couldn't agree to something I couldn't prove. [sic]
 {¶ 32} "THE COURT: Well, apparently you agreed to some changes and we thought you agreed to those changes, but you have not, so if you don't have an agreement, that's fine. I'm not criticizing you for it, but you get what you got. You get the deal you made.
 {¶ 33} "So you've got to go back to mediation. Now, my theory when I talked to the lawyers when you go back to mediation, you know, what he's going to agree to, maybe something, maybe nothing. If he doesn't agree to anything, you are right back in court here six months past.
 {¶ 34} "PLAINTIFF: Right here.
 {¶ 35} "THE COURT: He agree [sic] to make some accommodations — exactly those accommodations if unacceptable in that regard, you are entitled to have a court hearing and it isn't going to be today. If that's what you want, we'll give you one." (Emphasis added.)
 {¶ 36} Whereupon, there was some discussion of what Mrs. Hanselman wanted, and what had been agreed upon pursuant to the mediated parenting order. The court then interrupted:
 {¶ 37} "THE COURT: I'll enforce the mediation agreement. They can go back to mediation.
 {¶ 38} "What about the balance of it, other than that, is it agreed?"
 {¶ 39} A discussion of the other issues ensued, and it was apparent that every other issue in the divorce, including incompatibility, was agreed upon. The trial court then continued:
 {¶ 40} "THE COURT: What I'm going to do is I'm going to enforce their agreement and send them back to mediation. That's going to be the final order of the court to go back to mediation and get a report. Or if not able to mediate, she can bring such motion she thinks is appropriate. If they can work it out, fine. If they don't, then they'll be coming back, but it will be construed as a post-decree matter.
 {¶ 41} "PLAINTIFF: What does that mean?
 {¶ 42} "THE COURT: The divorce is over. You are getting divorced today."
 {¶ 43} The trial court then made it clear for the record that Mrs. Hanselman was proceeding against her lawyer's advice, and there was a discussion of whether she wanted to keep her married name. The judge then continued:
 {¶ 44} "THE COURT: Do you understand what's happening?
 {¶ 45} "PLAINTIFF: Yes.
 {¶ 46} "THE COURT: Tell me what's happening? [Question-mark in original.]
 {¶ 47} "PLAINTIFF: That I'm getting divorced today.
 {¶ 48} "THE COURT: And —
 {¶ 49} "PLAINTIFF: If I decide to change my name or not, and then going to go to the mediator to discuss the children.
 {¶ 50} "THE COURT: Okay.
 {¶ 51} "What kind of parental rights do you have now? What do you think they are?
 {¶ 52} "PLAINTIFF: The way it has been where I get them on the weekends.
 {¶ 53} "THE COURT: It will not change unless the court changes that, do you understand that?
 {¶ 54} "PLAINTIFF: Yes.
 {¶ 55} "THE COURT: Do you have any questions at all about what we're doing?
 {¶ 56} "PLAINTIFF: No.
 {¶ 57} "THE COURT: Is there anything you want to say?
 {¶ 58} "PLAINTIFF: No, I probably should talk to my attorney
 {¶ 59} "THE COURT: Why don't you go and chat with him. If there's anything you want to say, otherwise, do you have any questions of this witness?
 {¶ 60} "MR. GOELZ: No, your Honor, I do not.
 {¶ 61} "THE COURT: Thank you.
 {¶ 62} "MR. BARBATO: For the record, obviously if they agree to some agreement in mediation, that also —
 {¶ 63} "THE COURT: Sure. If they reach an agreement, incorporate it into an order.
 {¶ 64} "Anything else, ma'am, you would like to say?
 {¶ 65} "PLAINTIFF: No."
 {¶ 66} There followed testimony establishing jurisdiction, and discussion of some miscellaneous issues, including a personal injury claim that Mrs. Hanselman might have against a third party, in which Mr. Hanselman waived any interest. After determining that neither counsel had any further matters to take up with the court, the trial court concluded as follows:
 {¶ 67} "THE COURT: Service of summons approved. The plaintiff shall be entitled to a divorce from the defendant on the grounds of incompatibility. Likewise, the defendant shall be entitled to a divorce from the plaintiff on the grounds of incompatibility. The court is absolutely satisfied that profound differences have arisen in this marriage, such that the objects of matrimony not been achieved [sic]. The parties are incompatible.
 {¶ 68} "The parties' agreement with respect to the mediation, the agreement with respect to the minor children found to be completed in the order of the court and found to be in the children's best interest pursuant to the parties' agreement. Since the plaintiff has relocated, she is entitled under the terms of their agreement to return to mediation, and that will be the order of the court.
 {¶ 69} "All other parental rights and responsibilities are as previously agreed to by the parties. The only modification here is the child support, which is by agreement of the parties, modified to the agreement, which was cited by the parties.
 {¶ 70} "The agreement of the parties with respect to the separation agreement is found to be equitable, should be incorporated in to a decree, to be presented to the court within fifteen days. There are QDROs — thirty days.
 {¶ 71} "MR. GOELZ: Thirty days since we've got fifteen days with Peggy McCormick [the mediator, apparently].
 {¶ 72} "THE COURT: Thirty days is reasonable. Thirty days.
 {¶ 73} "The request for her former name is well taken and granted. That should be incorporated into a journal entry.
 {¶ 74} "Anything else?
 {¶ 75} "MR. GOELZ: Thank you.
 {¶ 76} "MR. BARBATO: No.
 {¶ 77} "PLAINTIFF: No.
 {¶ 78} "THE COURT: Court is hereby granted [sic], court is in recess.
 {¶ 79} "MR. GOELZ: Thank you, your Honor."
 {¶ 80} In April, 2006, a judgment and decree of divorce was entered, which incorporated the terms of the "Temporary Parenting Agreement" as and for the allocation of parental rights and responsibilities. From the judgment and decree of divorce, Mrs. Hanselman appeals.
 II {¶ 81} Mrs. Hanselman's First Assignment of Error is as follows:
 {¶ 82} "THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS OF LAW BY DECLARING THE `TEMPORARY PARENTING AGREEMENT' TO BE THE APPELLANT'S FINAL AGREEMENT DESPITE APPELLANT'S PROTESTS AND WITHOUT CONDUCTING A TRIAL."
 {¶ 83} We agree with Mrs. Hanselman that the Temporary Parenting Agreement entered into between the parties on October 20, 2005, by its terms, is intended to be temporary. Nothing in the agreement recites that it is to be the basis for a final judgment and decree of divorce.
 {¶ 84} When Mrs. Hanselman made it clear, at the January 19, 2006 hearing, that she was not agreeable to incorporating the terms of the Temporary Parenting Agreement into the final judgment and decree of divorce, she was entitled to an evidentiary hearing on the issue of the allocation of parental rights and responsibilities. Indeed, at one point the trial court acknowledged Mrs. Hanselman's right to an evidentiary hearing when it told her that if the result of mediation was not acceptable to her, "you are entitled to have a court hearing and it isn't going to be today. If that's what you want, we'll give you one."
 {¶ 85} Even as a basis for a temporary order allocating parental rights and responsibilities, the Temporary Parenting Agreement that Mrs. Hanselman signed contemplated that upon her relocating to West Carrollton, which she did, she could return to mediation to revisit the issue of the temporary allocation of parental rights and responsibilities during the pendency of the divorce litigation. It was therefore not inappropriate for the trial court to direct the parties to mediate the parental issues, but it was inappropriate to enter a final judgment and decree of divorce, incorporating a final allocation of parental rights and responsibilities, without affording Mrs. Hanselman a hearing on that issue.
 {¶ 86} It is no answer to urge, as Mr. Hanselman does in his brief, that Mrs. Hanselman will still have an opportunity to be heard, after mediation, on the issue of post-decree modification of parental rights and responsibilities. By virtue of R.C. 3109.03, before a decree of divorce, a husband and wife "shall stand upon an equality as to the parental rights and responsibilities for the care of their children and the place of residence and legal custodian of their children." Once parental rights and responsibilities have been allocated in a decree of divorce, however, the equal standing of the parents must yield to the requirement, as a condition of modification of the order, that there has been a change of circumstances justifying modification. R.C.3109.04(E)(1)(a).
 {¶ 87} In other words, Mrs. Hanselman has been prejudiced by the denial of an evidentiary hearing on the issue of the allocation of parental rights and responsibilities, by the imposition, as a result of the initial allocation, of the additional burden of having to prove a change of circumstances justifying a modification of the allocation of parental rights and responsibilities.
 {¶ 88} Mrs. Hanselman's First Assignment of Error is sustained.
 III {¶ 89} Mrs. Hanselman's Second Assignment of Error is as follows:
 {¶ 90} "THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS OF LAW BY OVERRULING APPELLANT'S MOTION FOR ORDER SETTING TRIAL DATE AND MOTION OPPOSING DEFENDANT'S PROPOSED FINAL DECREES AND MOTION FOR VOLUNTARY RECUSAL."
 {¶ 91} Other than the issue of recusal, all of the issues raised by Mrs. Hanselman in this assignment of error are moot in view of our disposition of her First Assignment of Error.
 {¶ 92} On the issue of recusal, we note first that the disqualification of a judge of a court of common pleas for bias and prejudice is confided to the sole determination of the Chief Justice of the Supreme Court of Ohio, or a justice of the Ohio Supreme Court designated by the Chief Justice to perform that function. Ohio Constitution, Article IV, Section 5(C). Furthermore, although we have found error on the part of the trial court, we have reviewed the entire transcript of proceedings, and we find nothing in the record that would support a claim that the trial judge was biased or prejudiced against Mrs. Hanselman. Indeed, the record reflects that he treated her with patience and respect.
 {¶ 93} Mrs. Hanselman's Second Assignment of Error is overruled.
 {¶ 94} Mrs. Hanselman's First Assignment of Error having been sustained, her Second Assignment of Error having been overruled, and the parties having agreed, on the record, that they are incompatible, that part of the judgment and decree of divorce actually granting a divorce to the parties is Affirmed, the judgment of the trial court is Reversed in other respects, and this cause is Remanded for a hearing on the issue of the allocation of parental rights and responsibilities, and for any other and further proceedings that may become necessary or desirable.
WOLFF, P.J., and GRADY, J., concur.