The STATE of Ohio, Appellee,

v.

LAMB, Appellant.

[Cite as *State v. Lamb,* 163 Ohio App.3d 290, 2005-Ohio-4741.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 20777 and 20778.

Decided Sept. 9, 2005.

Patrick Bonfield, Director of Law, Deirdre Logan, Chief Prosecutor, and Stephanie L. Cook, Assistant City Prosecutor, for appellee.

Glen H. Dewar, Montgomery County Public Defender, for appellant.

BROGAN, Presiding Judge.

{¶ 1} In these consolidated cases, Michael P. Lamb appeals from two Dayton Municipal Court judgment entries finding him in criminal contempt of court and ordering him jailed for failing to perform community service to satisfy previously imposed fines and court costs.

{¶ 2} In his sole assignment of error in each case, Lamb argues that the length of his jail sentence for criminal contempt violates the Equal Protection Clause of the Fourteenth Amendment.

{¶ 3} In case No. 20777, the record reflects that Lamb was convicted on May 30, 2000, following a no-contest plea to a first-degree misdemeanor charge of driving without an operator's license. The trial court sentenced him to 30 days in jail, gave him credit for three days served,[1] and suspended the balance of 27 days. The trial court also placed him on unsupervised probation, assessed a $50 fine, and imposed court costs of $90. After Lamb failed to pay the fine or costs as ordered, the trial court issued a warrant for his arrest. He was arrested for nonpayment on March 6, 2002, and he was released the following day. Lamb subsequently appeared in court and agreed to a payment plan. When Lamb again failed to pay his fine and court costs, the trial court found him indigent on June 12, 2002. At that time, the trial court converted Lamb's fine and warrant costs to 46 hours of community service and suspended all other court costs. After Lamb failed to perform community service as ordered, the trial court gave him a second chance to do so. Once again, however, Lamb failed to perform any work. As a result, the trial court again issued a warrant for his arrest. The trial court then held a brief hearing on October 27, 2004, and found him in contempt for failing to perform community service. The trial court sentenced him to ten days in jail and gave him credit for three days served.[2] The trial court stayed execution of the sentence pending appeal.

---

1. Lamb served three days in jail after failing to appear for his arraignment on the traffic charge.

2. Prior to the hearing at which the trial court found Lamb in contempt, he served three days in jail upon his arrest for nonperformance of community service.

{¶ 4} In case No. 20778, the record reflects that Lamb pleaded guilty on July 31, 2003, to a first-degree misdemeanor charge of driving without an operator's license. The trial court imposed a suspended 60–day jail sentence, placed him on unsupervised probation, and ordered him to pay a $100 fine and court costs of $58. Lamb subsequently obtained a payment extension, but failed to meet it. With a warrant pending for his arrest, Lamb appeared in court, paid $100, and obtained a second payment extension.[3] He also agreed to pay warrant costs and a warrant-block fee. Lamb failed to meet his new payment deadline, however, and another warrant was issued for his arrest. He was arrested for nonpayment on January 23, 2004, and he was released the following day. When he appeared in court again on January 27, 2004, the trial court converted his fine and court costs to 16 hours of community service. After Lamb failed to perform any community service, the trial court held a brief hearing on October 27, 2004, found him contempt, and ordered him jailed for ten days with credit for three days served.[4] The trial court ordered this jail sentence to be served consecutively to the jail sentence in case No. 20777. The trial court stayed execution of the sentence pending appeal.

{¶ 5} In his sole assignment of error in each appeal, Lamb contends that the trial court violated the Equal Protection Clause of the Fourteenth Amendment when it jailed him for contempt rather than applying R.C. 2947.14, which addresses the incarceration of nonindigent defendants who fail to pay a fine. Although the trial court had found him indigent in at least one of the two cases and had converted his fine and some court costs to community service, the essence of Lamb's argument is that the trial court violated equal protection principles by punishing him more harshly through contempt for failure to perform community service to satisfy the fine and costs than it could have punished a nonindigent defendant under R.C. 2947.14 for simply refusing to pay a fine.

{¶ 6} It is well settled, however, that a court should not reach constitutional issues unless absolutely necessary. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9. During oral argument, Lamb's attorney proposed an alternative basis for resolving the present appeals. Relying on R.C. 2947.14, defense counsel stressed that a nonindigent defendant who refuses to pay a fine may be jailed for such failure, but must "receive credit upon the fine at the rate of fifty dollars per day or fraction of a day." R.C. 2947.14(D). Defense counsel

---

3. The trial court applied $10 of Lamb's payment to a processing fee, $58 to court costs, and $32 to his fine.

4. Prior to the hearing at which the trial court found Lamb in contempt, he served three days in jail upon his arrest for nonperformance of community service.

then noted that the trial court had ordered Lamb arrested and jailed for nonpayment of his fines *before* any finding of indigence was made and *before* the fines were converted to community service. Indeed, the record reflects that Lamb served at least part of two days in jail in each case for nonpayment of his fines. As a result of this incarceration, defense counsel argued that Lamb was entitled, under R.C. 2947.14(D), to a credit of $50 against the fines for each day or fraction of a day that he had served for nonpayment. Moreover, defense counsel pointed out that if Lamb had received this credit against the fines, the fines would have been completely satisfied. In light of this fact, defense counsel asserted that the trial court acted without authority when it later converted the fines to community service and, ultimately, ordered Lamb jailed for nonperformance of the community service.

{¶ 7} Upon review, we find the foregoing argument to be persuasive. The record supports defense counsel's claim that Lamb was incarcerated for at least a fraction of two days in each case for nonpayment of his fines. Under R.C. 2947.14, he was entitled to a credit against his fines for these periods of incarceration. *State v. Swift,* Montgomery App. No. 20543, 2005-Ohio-1595, 2005 WL 742496, at ¶ 20 ("The $50 fine Swift received would have only required that he spend one day in jail under O.R.C. 2947.14(D). * * * Clearly, with multiple arrests on warrants [for non-payment], Swift had served out the one day necessary to eliminate the $50 fine"). If the trial court had credited Lamb with time served for nonpayment of his fines as required by R.C. 2947.14(D), the fines would have been completely satisfied. Consequently, the trial court lacked authority to convert the no-longer-existing fines to community service. Although Lamb did not raise this issue below, we find that the trial court's conversion of the satisfied fines to community service and its incarceration of Lamb for nonperformance of the community service constitute plain error under Crim.R. 52(B).

{¶ 8} Having determined that the trial court lacked authority to convert the satisfied *fines* to community service, we next must address the trial court's conversion of Lamb's *court costs* to community service.[5] As noted above, the trial court ordered Lamb incarcerated for ten days in each case for his failure to perform community service to satisfy his fines *and* his court costs.

{¶ 9} In *Swift,* we recognized that "a court cannot incarcerate a person for non-payment of court costs." *Swift,* supra, at ¶ 21, citing *Strattman v. Studt* (1969), 20 Ohio St.2d 95, 103, 49 O.O.2d 428, 253 N.E.2d 749. Indeed, "[a] judgment for

---

5. In appellate case No. 20777, the trial court converted Lamb's fine and certain "warrant costs" to 46 hours of community service. We have held that warrant charges are a type of court costs. *Swift,* supra, at ¶ 23–25. Likewise, in appellate case No. 20778, the trial court converted the fine and court costs to community service.

costs in a criminal traffic case is a civil, not a criminal obligation, and may be collected only by the methods provided for the collection of civil judgments." Id.; see, also, *State v. Self,* Montgomery App. No. 20370, 2005-Ohio-1120, 2005 WL 589887, at ¶ 64 (recognizing that "courts may not confine defendants to work off court costs in order to satisfy the government's contractual interest").

{¶ 10} In the present case, of course, the trial court did not directly jail Lamb for nonpayment of court costs. Rather, it found him in contempt for failure to perform community service to satisfy his fines and court costs. Notably, in *State v. Glasscock* (1993), 91 Ohio App.3d 520, 632 N.E.2d 1328, the Fourth District Court of Appeals held that courts may not order offenders to perform community service to satisfy court costs. In so ruling, the *Glasscock* court first observed that court costs are civil debts. It then found "no authority permitting a court to order a civil debtor to perform community service to pay off a debt." Id. at 525, 632 N.E.2d 1328.

{¶ 11} We note, however, that certain statutes now expressly permit a trial court to order a defendant to perform community service to satisfy a judgment for court costs. See R.C. 2947.23(A)(1)(a); R.C. 2929.28(B). In *State v. White,* 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, the Ohio Supreme Court recognized that R.C. 2947.23 now authorizes a court "to impose community service upon the defendant as a method to pay off or forgive costs." Id. at ¶ 15. The *White* court declined, however, to address the legality of this method of collecting court costs. Id. Thus, the issue remains an open question.

{¶ 12} But even if we assume, arguendo, that the trial court acted properly in converting Lamb's court costs to community service,[6] we nevertheless conclude that he cannot be jailed for failure to work off a civil debt such as court costs. To jail a defendant for failure to pay a civil obligation unquestionably would violate Section 15, Article I of the Ohio Constitution, which provides that "[n]o person shall be imprisoned for debt in any civil action." By the same token, we conclude that to jail a defendant for failure to work to satisfy a civil obligation is equally impermissible.

{¶ 13} "[A]lthough trial courts have the authority to enforce their orders through contempt proceedings, R.C. 2705.02, an order to pay court costs is essentially a judgment on a contractual debt where the court is the creditor and

---

6. The applicability of the foregoing statutes in the present cases is perhaps questionable given that R.C. 2947.23(A)(1)(a) took effect March 3, 2003, and R.C. 2929.28(B) took effect January 1, 2004. For present purposes, however, we will presume that the trial court acted within its discretion in converting Lamb's court costs to community service. We will indulge in this presumption for two reasons. First, Lamb appears to have agreed to the conversion. Second, on appeal Lamb does not challenge the trial court's authority to convert his court costs to community service. His only argument concerns his incarceration for contempt.

the party ordered to pay court costs is the debtor. As such, the creditor, i.e., the court, can collect only the money it is due by the methods provided for the collection of civil judgments. A contempt proceeding is not a proper method by which to collect a civil judgment." *In re Buffington* (1993), 89 Ohio App.3d 814, 816, 627 N.E.2d 1013, citing *Heidelberg College v. Depew* (1988), 44 Ohio Misc.2d 20, 541 N.E.2d 637.

{¶ 14} Likewise, a creditor may not resort to a criminal contempt proceeding to punish a debtor who fails to abide by a prior agreement to work to satisfy a civil debt.[7] Although a debtor voluntarily may enter into an agreement to work to satisfy a debt, he cannot be arrested and punished if he later changes his mind and refuses to labor. *United States v. Reynolds* (1914), 235 U.S. 133, 138–147, 35 S.Ct. 86, 59 L.Ed. 162; see, also, *Bailey v. Alabama* (1911), 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191 (holding that a person cannot be exposed to a criminal conviction simply for failing or refusing to perform an agreement for personal services to satisfy a civil debt); *Gen. Elec. Co. v. Internatl. Union United Auto., Aircraft & Agricultural Implement Workers* (1952), 93 Ohio App. 139, 158, 50 O.O. 399, 108 N.E.2d 211 ("[I]t is clear beyond cavil that any attempt by this or any other American Court to compel a person to labor against his will except as a punishment for crime would be utterly void under the XIIIth Amendment of the Constitution of the United States").

{¶ 15} We note too that " '[w]hatever of social value there may be, and of course it is great, in enforcing contracts and collection of debts, Congress has put it beyond debate that no indebtedness warrants a suspension of the right to be free from compulsory service.' " *Pollock v. Williams* (1944), 322 U.S. 4, 18, 64 S.Ct. 792, 88 L.Ed. 1095. Thus, "no state can make * * * criminal sanctions available for holding unwilling persons to labor." Id.; see, also, Section 1994, Title 42, U.S.Code ("[A]ll acts, laws, resolutions, orders, regulations, or usages of any Territory or State * * * by virtue of which any attempt shall hereinafter be made to * * * enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void").

{¶ 16} In *Bailey v. Alabama* (1911), 219 U.S. 219, 243–244, 31 S.Ct. 145, 55 L.Ed. 191, the U.S. Supreme Court made the following pertinent observations with regard to the prohibitions now codified at Section 1994, Title 42, U.S.Code:

---

7. Parenthetically, we note that our analysis herein has no applicability to contempt orders regarding the nonpayment of spousal support and child support because those obligations do not qualify as civil debts arising on express or implied contract, and they are outside the scope of the constitutional prohibition against imprisonment as a means of enforcing payment. See, e.g., *Belding v. State* (1929), 121 Ohio St. 393, 397–399, 169 N.E. 301.

{¶ 17} "The act of Congress, nullifying all state laws by which it should be attempted to enforce the 'service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise,' necessarily embraces all legislation which seeks to compel the service or labor by making it a crime to refuse or fail to perform it. Such laws would furnish the readiest means of compulsion. The 13th Amendment prohibits involuntary servitude except as punishment for crime. But the exception, allowing full latitude for the enforcement of penal laws, does not destroy the prohibition. It does not permit slavery or involuntary servitude to be established or maintained through the operation of the criminal law by making it a crime to refuse to submit to the one or to render the service which would constitute the other. The state may impose involuntary servitude as a punishment for crime, but it may not compel one man to labor for another in payment of a debt, by punishing him as a criminal if he does not perform the service or pay the debt."

{¶ 18} Based on the foregoing authority, we conclude that the trial court committed plain error when it ordered Lamb incarcerated for failing to perform community service in lieu of his court costs.

{¶ 19} The trial court's judgment entries finding Lamb in criminal contempt for nonperformance of community service to satisfy his fines and court costs are hereby reversed, and Lamb is discharged from any further criminal liability.

Judgment accordingly.

GRADY and DONOVAN, JJ., concur.