[Cite as *State v. Johnson*, 2016-Ohio-5160.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

STATE OF OHIO                    :
                                 :
    Plaintiff-Appellee           :    C.A. CASE NO. 2015-CA-24
                                 :
v.                               :    T.C. NO. 14CR215
                                 :
RICKY D. JOHNSON                 :    (Criminal appeal from
                                 :     Common Pleas Court)
    Defendant-Appellant          :
                                 :

        . . . . . . . . . . .

**O P I N I O N**

Rendered on the    29th    day of     July    , 2016.

        . . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

ANDREW C. SCHLUETER, Atty. Reg. No. 0086701, 5540 Far Hills Avenue, Suite 202, Dayton, Ohio 45429
        Attorney for Defendant-Appellant

        . . . . . . . . . . . .

DONOVAN, P.J.

    **{¶ 1}** Defendant-appellant Ricky D. Johnson appeals his conviction and sentence for the following offenses, to wit: 1) having weapons while under disability, in violation of R.C. 2923.13(A)(3)(B), a felony of the third degree; 2) two counts of trafficking in heroin, in violation of R.C. 2925.03(A)(1)(C)(6)(c), both felonies of the third degree; 3) two counts

of possessing criminal tools, in violation of R.C. 2923.24(A)(C), both felonies of the fifth degree; and 4) one count of endangering children, in violation of R.C. 2919.22(A)(E)(2)(a), a misdemeanor of the first degree. Both counts of possessing criminal tools were accompanied by forfeiture specifications.

{¶ 2} Johnson filed a motion for leave to file a delayed notice of appeal with this Court on July 23, 2015. In a decision and entry issued on August 18, 2015, we sustained Johnson's motion for leave to file notice of a delayed appeal.

{¶ 3} On October 2, 2014, the State filed a seventeen count indictment charging Johnson with the following offenses: six counts of possessing criminal tools, all felonies of the fifth degree; three counts of trafficking in heroin, all felonies of the third degree; two counts of having weapons while under disability, both felonies of the third degree; two counts of possession of cocaine, both felonies of the fifth degree; two counts of receiving stolen property, both felonies of the fifth degree; one count of aggravated possession of drugs, a felony of the fifth degree; and one count of endangering children, a misdemeanor of the first degree. The indictment also included specifications for forfeiture of an automobile, a cellular phone, and a pair of underpants that had been modified to conceal and transport contraband.

{¶ 4} At his arraignment on October 6, 2014, Johnson pled not guilty to all of the charges contained in the indictment. Thereafter on December 17, 2014, Johnson pled guilty to the following charges: two counts of trafficking in heroin, both felonies of the third degree; one count of having a weapon while under disability, a felony of the third degree; two counts of possessing criminal tools, both felonies of the fifth degree; and one count of endangering children, a misdemeanor of the first degree. Johnson also agreed to

forfeiture of the automobile and the modified underpants. In exchange for his guilty pleas, the State agreed to dismiss all of the remaining counts and forfeiture specifications. We also note that Johnson and his counsel stipulated that none of the offenses were allied offenses of similar import. At the conclusion of the plea hearing, the trial court ordered the probation department to generate a presentence investigation report (PSI).

{¶ 5} Initially, disposition was scheduled to occur on January 12, 2015; however, it was continued to January 15, 2015. On that day, the trial court sentenced Johnson to thirty-six months in prison for having a weapon while under disability, thirty months in prison for each count of trafficking in heroin, ten months in prison for each count of possessing criminal tools, and six months in prison for child endangerment. The trial court ordered that the sentences for having a weapon while under disability and both counts of trafficking in heroin be served consecutive to one another for an aggregate sentence of eight years in prison. All remaining counts were ordered to run concurrently to the aggregate sentence. The trial court also imposed fines and court costs against Johnson, and ordered him to pay back the costs of his court appointed counsel at a rate of $50.00 per month once he was released from prison.

{¶ 6} It is from this judgment that Johnson now appeals.

{¶ 7} Johnson's first assignment of error is as follows:

{¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING MR. JOHNSON TO AN AGGREGATE EIGHT YEAR PRISON SENTENCE."

{¶ 9} In his first assignment, Johnson contends that the trial court erred when it sentenced him to an aggregate sentence of eight years in prison. Specifically, Johnson argues that the trial court failed to properly consider the purpose and principles of

sentencing pursuant to R.C. 2929.11 and R.C. 2929.12 when it imposed an eight-year prison term. We note that Johnson does not challenge the trial court's imposition of consecutive sentences nor the efficacy of the findings made by the court to support the consecutive sentences.

{¶ 10} In *State v. Exon*, 2d Dist. Clark No. 2014-CA-106, 2016-Ohio-600, ¶ 49, we recently stated the following regarding felony sentencing:

"The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013–Ohio–2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard,* 194 Ohio App.3d 500, 2011–Ohio–3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis,* 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 38.

{¶ 11} The principles and purposes of felony sentencing are set forth in R.C. 2929.11. The statutory "seriousness" and "recidivism" factors that guide a court's sentencing discretion are found in R.C. 2929.12. We have found that a trial court need not expressly state that it has considered R.C. 2929.11 and R.C. 2929.12. *See, e.g., State v. Guy,* 2d Dist. Clark Nos. 2015–CA–28, 2015–CA–29, 2016–Ohio–425, ¶ 16, quoting *State v. Neff,* 2d Dist. Clark No. 2012–CA–31, 2012–Ohio–6047, ¶ 5. In any event, the trial court here specifically referenced both statutes by number during

the sentencing hearing, and it explicitly considered and applied both of them to the facts before it. (Sentencing Tr. at 56-59, 60-62). It also stated in its sentencing entry that it had considered the factors set forth in R.C. 2929.12 and the principles and purposes of sentencing found in R.C. 2929.11. (Doc. # 101 at 6, 7, 8).

{¶ 12} At the sentencing hearing, the trial court made the following pertinent findings:

> The Court: *** With regard to sentencing, on the Counts, in terms of non-financial sentencing but residential sentencing, the Court finds that Counts One, Nine, Ten, Fourteen, Sixteen, and Seventeen are not allied offenses of similar import. In imposing sentence[,] the Court considered and applied the purposes and principles of sentencing set forth in [R.C.] 2929.11 divisions A, B, and C. The Court also considered seriousness of the conduct, likelihood of recidivism, and lack of service in the Armed Forces.
>
> Upon evaluation of the factors, the Court finds that as far as seriousness factors go, that with regard to more serious, the Defendant possessed, stole a high-powered firearm and a bulletproof vest, and assisted others in exchanging those firearms to drug dealers for heroin and large sums of money. And that the Defendant engaged in a firearm/vest for drugs swap in the immediate presence of his two-year old daughter. And that the Defendant committed the offense for hire. Meaning, he was facilitating a heroin addiction of his own and his other co-defendants. And as part of organized criminal activity. That being with co-defendants Ashley Saunders and David Skapik.

With regard to less serious factors, the Court finds that there are substantial grounds to mitigate the Defendant's conduct. Although the grounds are not enough to constitute a defense. Specifically, that the Defendant successfully worked with law enforcement to enable officers in retrieving the high-powered firearms and bulletproof vest through the execution of search warrants.

The Court concludes that the factors [which] establish Defendant's conduct is more serious outweigh factors establishing [that] Defendant's conduct is less serious. With regard to recidivism and more likely to commit future crimes, the Court finds that the Defendant – Court finds that the Defendant has previously been terminated from post-release control just five months before committing the offenses leading to his convictions and the case at bar.

Court finds that the Defendant has a history of criminal convictions. He has not responded favorably to sanctions previously imposed for the criminal convictions. And that he has demonstrated a pattern of drug abuse that is related to the offense. And he refuses to acknowledge that he has that demonstrative pattern or refuses treatment for his drug abuse.

I want to explain to you what I mean by that, Mr. Johnson. What I mean by that is, not that [I] don't believe that you want help, but the Court believes that based on all the opportunities that we talked about, with regard to your avenues for trying to get help, that you refused to take advantage of those or you chose not to. Do you understand what I'm saying?

Johnson: Yes, sir.

The Court: With regard to less likely to commit future crimes, the Court finds that the Defendant shows genuine remorse for the offense involving the stolen firearms and bulletproof vest. The Court concludes that the factors establishing the Defendant's recidivism is more likely outweigh factors establishing Defendant's recidivism is less likely. The Court considered the Defendant's military service record. Finds that he has no military service record.

***

With regard to Counts Nine and Ten, the Court finds that the Defendant is being sentenced for a specified felony drug offense in violation of Chapter 2929 of the Revised Code for which a presumption of prison is specified. The Court finds that [R.C.] 2929.13(D)(1) applies to the sentencing analysis. It sets forth that it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing.

The Court finds that a community control sanction or a combination of community control sanctions would not adequately punish the Defendant and protect the public from future crimes because the applicable factors under [R.C.] 2929.12 indicating a lesser likelihood of recidivism do not outweigh the applicable factors under that section indicating a greater likelihood of recidivism.

The Court also finds that a community control sanction or a

combination of community control sanctions would demean the seriousness of the offense because one or more of the factors under 2929.12 that indicate the Defendant's conduct was less serious than the conduct normally constituting the offense are either not applicable or do not outweigh the applicable factors under that section that indicate that the Defendant's conduct was more serious than conduct normally constituting the offense.

With those findings, the Court finds that Ohio law requires the Court to impose a prison term on Counts Nine and Ten upon the Defendant. Court also finds Defendant is not amenable to available community control sanction at this time. The Court notes that no reasonable alternative to prison are available in taking into account the inability to follow conditions of bond, the Defendant's criminal history, and the Court's lack of confidence that the Defendant will follow conditions of community control.

The Court also finds it significant, in reaching its conclusion, that imposition of a term of imprisonment would achieve the purposes and principles of sentencing through the State's recommendation that prison be imposed. That the Defendant was on post-release control. And while on post-release control, subject to a residential search by the APA officials, was found to be housing a fugitive and was found to be in possession of a soft-sized baggy of marijuana and heroin residue. And also that the Defendant initially chose to place stolen high-powered firearms and a bulletproof vest into the hands of drug dealers that could have posed a great

risk of harm to any undercover narcotics officer, confidential informant, uniformed officers, or an innocent bystander in the vicinity of the drug dealer at an inopportune time.

The Court was also persuaded by the fact that the Defendant regularly traveled to a residence and bought heroin while in the immediate vicinity of his two-year old daughter. And the Court also finds significant that after the sentencing hearing on January 12[, 2015,] that the Defendant was reported to have been disruptive and shouted obscenities at jail staff members and threatened to kill a jail staff member. All while he had returned from this Court's hearing.

{¶ 13} The record reflects that Johnson has a lengthy history of criminal convictions for, among other things, numerous receiving stolen property charges, theft, disorderly conduct, multiple drug convictions involving both possession and trafficking, and two OVIs. Additionally, at the time that Johnson's PSI was being generated, he had an active warrant for a traffic offense in Miami County Municipal Court. In light of the foregoing, we find that the trial court properly considered the purposes and principles of sentencing pursuant to R.C. 2929.11 and R.C. 2929.12 when it imposed an eight-year prison term.

{¶ 14} Lastly, although not argued or otherwise challenged by Johnson, the trial court made all of the findings for consecutive sentences, including two of the alternative findings under R.C. 2929.14(C)(4)(b) and (c). (Sentencing Tr. at 64–65). Specifically, the trial court found that at least two or more of his crimes were committed as a course of conduct and the harm caused by two or more of the multiple offenses was so great or

unusual that no single prison term would adequately reflect the seriousness of his conduct. *Id.* The trial court also found Johnson's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime committed by him. *Id.* We review those findings under the standard set forth in R.C. 2953.08(G)(2), which authorizes us to vacate Johnson's consecutive sentences if we clearly and convincingly find that the record does not support them. *See State v. Marcum,* Slip Opinion No. 2016–Ohio–1002.

{¶ 15} As evidence of mitigation, Johnson cites the fact that he cooperated with law enforcement regarding the return of the stolen firearms and bulletproof vest, testified against his co-defendants, and that he is a drug abuser who has never received the proper help to cure his addiction. As noted above, the trial court found no "genuine remorse," however, and essentially concluded that Johnson's only real concern was for himself. Even if we accept the "mitigating" facts cited by Johnson, the record does not clearly and convincingly fail to support the trial court's consecutive-sentence findings. To the contrary, the record overwhelmingly supports them. We also note that the trial court stated that it considered Johnson's mitigation evidence when it imposed an eight-year aggregate sentence instead of the maximum sentence of eleven and one-half years it could have imposed.

{¶ 16} Having reviewed that evidence, along with the sentencing transcript and the PSI, we harbor no doubt that the record supports the trial court's consecutive-sentence findings that consecutive terms are necessary to protect the public from future crime or to punish Johnson and that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger Johnson poses to the public. The record

also supports the trial court's additional finding under R.C. 2929.14(C)(4)(c) that Johnson's extensive history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. Because the record supports that finding, we need not address whether the record supports the trial court's alternative finding under R.C. 2929.14(C)(4)(b). That finding was unnecessary in light of our determination that the trial court's finding under R.C. 2929.14(C)(4)(c) was proper. *See State v. Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, ¶ 12.

{¶ 17} In *Marcum,* the Ohio Supreme Court made clear that the standard contained in R.C. 2953.08(G)(2) applies to all felony sentencing-term challenges. In the instant case, the trial court properly considered the criteria found in R.C. 2929.11 and R.C. 2929.12, and the record does not clearly and convincingly fail to support its decision to impose non-maximum consecutive sentences. While a sentence also may be vacated under R.C. 2953.08(G)(2) if it is "contrary to law," Johnson makes no such argument in this case. In any event, we are unable to conclude that the sentence he received was contrary to law.

{¶ 18} Johnson's first assignment of error is overruled.

{¶ 19} Johnson's second assignment of error is as follows:

{¶ 20} "THE TRIAL COURT ERRED BY DISAPPROVING SHOCK INCARCERATION AND INTENSIVE PRISON PROGRAMS WITHOUT MAKING FINDINGS THAT GIVE REASONS FOR DISAPPROVAL."

{¶ 21} In his second assignment, Johnson argues that the trial court erred when it failed to make the necessary findings to support its decision disapproving him for shock incarceration and intensive program prison.

{¶ 22} At the sentencing hearing, the trial court made the following statement:

After reviewing the nature and circumstances of your offense, your conduct while on bond, your [PSI], your criminal history, your prior service of imprisonment, and your conduct while residing at the Tri-County Regional Jail, the Court does not recommend and disapproves you for placement in an intensive program prison. Disapproves you for placement in shock incarceration. ***

(Sentencing Tr. at 63).

{¶ 23} The judgment entry, Dkt. 101, states as follows:

COURT SENTENCING RECOMMENDATIONS

After a review of: the nature and circumstances of the offense(s) for which the Defendant was being sentenced; the Defendant's conduct while on bond; the [PSI]; the Defendant's criminal history; the Defendant's prior service of imprisonment; [and] the Defendant's conduct while residing at the Tri-County Regional Jail[,] ***

Based on those factors, the trial court disapproved of Johnson's participation in either shock incarceration or intensive program prison.

{¶ 24} The sentencing statute, R.C. 2929.19(D) provides as follows:

The sentencing court, pursuant to division (I)(1) of section 2929.14 of the Revised Code, may recommend placement of the offender in a program of shock incarceration under section 5120.031 of the Revised Code or an intensive program prison under section 5120.032 of the Revised Code, disapprove placement of the offender in a program or prison of that nature,

or make no recommendation. If the court recommends or disapproves placement, *it shall make a finding that gives its reasons for its recommendation or disapproval.* (Emphasis added).

{¶ 25} In *State v. Blessing,* 2d Dist. Clark No. 2011 CA 56, 2013–Ohio–392, we remanded the case for resentencing when the trial court simply stated, "in the interest of justice and truth in sentencing, it is hereby Ordered that the defendant serve her entire stated prison term in the Ohio State Penitentiary.   The Ohio Department of Corrections shall not place this defendant in an IPP (Intensive Prison Program), transitional control, a half-way house, or any other program or institution unless this Court upon reconsideration, expressly and in writing authorizes the same." *Id.* at ¶ 45.   We concluded that:

> "R.C. 2929.19(D) requires more than that reasons can be found in the record to support the trial court's disapproval of the programs; the statute requires that the trial court, if it shall make a recommendation, must 'make a finding that gives its reasons for its recommendation or disapproval.' This statutory requirement, imposed on the trial court, is not satisfied by an appellate court finding in the record reasons that the trial court could have given, or might have given, for disapproval." *State v. Allender,* 2d Dist. Montgomery No. 24864, 2012–Ohio–2963, ¶ 22. "The statute requires that the trial court provide its reasons for disapproving shock incarceration or the intensive program prison, not merely that the record supports reasons for disapproval that the trial court might have had, but did not express." *Id.* at ¶ 26.

*Blessing,* at ¶ 47.

**{¶ 26}** In *Allender, supra,* we reviewed and rejected as distinguishable or inapplicable the allegedly conflicting decisions of the Fifth, Eleventh and Twelfth District Court of Appeals. *State v. Jackson,* 5th Dist. Knox Nos. 05 CA 46, 05 CA 47, 2006–Ohio–3994; *State v. Tucker,* 12th Dist. Butler No. CA2011–04–067, 2012–Ohio–50; *State v. Lowery,* 11th Dist. Trumbull No. 2007–T–0039, 2007–Ohio–6734. *See Allender* at ¶ 23–25. The only other case cited by the State as conflicting with our precedent is *State v. Daniels,* 12th Dist. Fayette No. CA2014–05–010, 2015–Ohio–1346. The court in *Daniels* followed the reasoning in *Tucker,* which did not find any error when the court recited numerous facts on the record for its sentencing decision. As we stated in *Allender,* the facts are distinguishable when the trial court refers to various general principles that it considered, and to various sources of information that it reviewed, but does not make any specific factual findings to explain its disapproval of shock incarceration or the intensive program prison. "[T]he statute requires that the trial court give its reasons for disapproval, not merely that reasons for disapproval exist." *Allender* at ¶ 23.

**{¶ 27}** Recently, in *State v. Matthews*, 2d Dist. Montgomery No. 26405, 2015-Ohio-3388, we remanded the case for resentencing, stating the following:

> In the case before us, there is no dispute that Matthews was eligible
> for shock incarceration or intensive program prison, and the trial court failed
> to make findings identifying its reasons for disapproving placement in a
> program of shock incarceration or intensive program prison. The trial court's
> summary conclusion that the disapproval is based on the court's review of

Mr. Matthews' criminal history, the PSI and the facts and circumstances of the offense and any victim impact statement and for the reasons the court imposed the prison sentence, does not constitute a "finding that gives its reasons for * * * disapproval" within the contemplation of R.C. 2929.19(D). Without that finding, we conclude that the judgment of the trial court does not satisfy the requirement of the statute.

*Id.* at ¶ 14.

{¶ 28} At Johnson's sentencing hearing on January 15, 2015, the trial court made the following specific findings on the record which clearly support its decision for disapproving Johnson's placement in a program of shock incarceration or intensive program prison:

Trial Court: Turning to the – what I'm going to call Court's Exhibits 1 through 5, is Tri-County Regional Jail reports concerning your conduct while at the jail. And Court Exhibit 1 is that there was a plastic baggy containing an unknown black substance and a syringe found in your pod. Court's Exhibit 2 was a description of a syringe taped under your bed. And the dates of those were 9-14-14 and 9-20-14.

***

In Court's Exhibit 3, after you had been placed in jail. So you were placed in jail on January 9, 2015. On January 10[, 2015,] your pod was searched because there was a smoke smell and a cigarette was found under the bottom bunk. Half a cigarette was found under the bottom bunk of your cell. And the officers also found a crushed soap [bar] in a wet sock.

And then fight club rules written on the wall.

***

The other version is that you returned to court – you returned from court at the jail. And you had been unsteady coming through the doors. Required checking by medical. The nurse felt that you should be housed in booking and placed on medical watch. The report says – and I'm going to just read it. ["Johnson] immediately became disruptive and began shouting I was f***ing with him. I told him the nurse wanted him on medical watch. And he then began shouting at me. Removed his shirt and began making threats toward me. He shouted at me to come into his cell and he would kick my ass and he was going to kill me."

["Johnson] said when he was on ankle monitoring, he researched where I lived. And he knows who my life is. And he will kill me and my family. He continued to shout, he knows where I live and he is coming to see me. He continued to make threats until the court returns from Madison County came into the booking area.["] (sic).

***

And when the Court sees that you have trouble following bond. For whatever reason. Or the Court sees that you have difficulties in the jail. Whatever those difficulties are. Those are negative factors for the Court to examine. For the Court to say that this guy is ready for probation right off the bat.

***

But then we look at the negative side. And we look at the type of offense that was committed. We look at, what I'm going to call it, your conduct while on bond. We look at the reports that I have from the jail. And we look at your criminal history. And that is what the Court is talking about when we say balancing certain factors.

Sentencing Tr. at 32-41.

{¶ 29} Similar to the defendant in *Matthews*, it is undisputed that Johnson was eligible for shock incarceration or intensive program prison. However, unlike the trial courts in *Matthews* and *Allender*, the record establishes that the trial court here made sufficient findings identifying its specific reasons for disapproving Johnson's placement in a program of shock incarceration or intensive program prison. The trial court concluded that its rationale for disapproval was based on "the nature and circumstances of the offense(s) for which the Defendant was being sentenced; the Defendant's conduct while on bond; the [PSI]; the Defendant's criminal history; the Defendant's prior service of imprisonment; [and] the Defendant's conduct while residing at the Tri-County Regional Jail." As discussed above, the trial court's rationale is supported by numerous facts set forth by the trial court on the record, namely Court's Exhibits 1 through 5. In our view, this is more than just a "summary conclusion" and constitutes a "finding that gives its reasons for * * * disapproval" within the contemplation of R.C. 2929.19(D). Here, unlike the court in *Allender*, the trial court provided specific reasons for disapproving Johnson's placement in a program of shock incarceration or intensive program prison. Upon review, we therefore conclude that the judgment of the trial court satisfies the requirements of R.C. 2929.19(D).

{¶ 30} Johnson's second assignment of error is overruled.

{¶ 31} Johnson's third and final assignment of error is as follows:

{¶ 32} "THE TRIAL COURT ERRED IN IMPOSING A COST AND FEE REPAYMENT SCHEDULE TO BE COMPLETED AFTER MR. JOHNSON'S RELEASE FROM PRISON."

{¶ 33} In his final assignment, Johnson argues that the trial court erred when it ordered him to pay court costs, fines, and his court-appointed counsel fees through a post-prison repayment schedule set at $50.00 per month. Based upon our recent holding in *State v. Springs*, 2015-Ohio-5016, 53 N.E.3d 804 (2d Dist.), Johnson argues that such fees must be pursued by a county against a defendant in a separate civil action. Therefore, he asks us to vacate the portion of the judgment entry ordering him to pay court costs, fines, and his court-appointed counsel legal fees.

{¶ 34} Johnson's judgment entry of conviction states in pertinent part:

FINANCIAL OBLIGATION PAYMENT SCHEDULE

Defendant shall pay *court costs, fine, and court-appointed legal fees at a minimum of $50.00 per month* beginning the second month after release from confinement and due the 28th of each month thereafter. Clerk shall apply monies collected to court costs, fine, and court-appointed legal fees in that order.

{¶ 35} In *Springs*, which also involved the Champaign County Court of Common Pleas, we held that although the trial court, following defendant's guilty plea, could properly find defendant obligated to repay court-appointed counsel fees and enter judgment for them, the obligation to reimburse appointed-counsel fees could not properly

be blended into the court's post-confinement repayment schedule. *Id* at 12. Rather, if the county desired to enforce the reimbursement to which the trial court's findings entitled it, it was required to pursue civil execution collection proceedings. *Id*; *see* R.C. 2941.51(D).

{¶ 36} In the case at bar, the State does not challenge Johnson's argument that it was improper for the trial court to blend appointed-counsel fees into a post-confinement repayment schedule. The State, however, contends that the trial court was well within its authority to order Johnson to pay court costs and fines through a post-confinement repayment schedule set at $50.00 per month.

{¶ 37} R.C. § 2949.111(A)(1) defines "court costs" as "any assessment that the court requires an offender to pay to defray the costs of operating the court." R.C. 2949.111(A)(3) defines "reimbursement" as "any reimbursement for the costs of confinement that the court orders an offender to pay pursuant to section 2929.28 of the Revised Code, any supervision fee, any fee for the costs of house arrest with electronic monitoring that an offender agrees to pay, any reimbursement for the costs of an investigation or prosecution that the court orders an offender to pay pursuant to section 2929.71 of the Revised Code, or any other costs that the court orders an offender to pay."

{¶ 38} We review a trial court's imposition of a repayment schedule for court costs under an abuse of discretion standard. *See State v. Gullett,* 4th Dist. Gallia No. 09CA4, 2010–Ohio–2785, ¶ 10. Pursuant to R.C. 2947.23, the trial court was required to "include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." However, court costs are distinct from criminal punishment. This is because "although costs in criminal cases are assessed at sentencing and are

included in the sentencing entry, costs are not punishment, but are more akin to a civil judgment for money." *State v. Threatt,* 108 Ohio St.3d 277, 2006–Ohio–905, 843 N.E.2d 164, ¶ 15. An order to pay court costs is essentially a judgment on a contractual debt where the court is the creditor and the party ordered to pay court costs is the debtor. *State v. Lamb*, 163 Ohio App.3d 290, 2005-Ohio-4741, 837 N.E.2d 833, ¶ 13 (2d Dist.). As such, the creditor, i.e., the court, *can collect only the money it is due by the methods provided for the collection of civil judgments. Id.*

**{¶ 39}** In *Threatt,* the Ohio Supreme Court held that "the state may use any method available for collection of a civil judgment for money." 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, at ¶ 16. Here, the trial court clearly had the authority to impose court costs against Johnson at sentencing. Further, once Johnson was released from prison, the State or the Department of Rehabilitation and Corrections could then have implemented one of many civil collection methods to collect the costs generated during his case. However, the trial court did not have the authority to enforce monetary obligations *except through civil enforcement mechanisms. State v. Springs*, 2015-Ohio-5016, 53 N.E.3d 804, ¶ 13 (2d Dist.). Since costs from a criminal action can only be collected through civil enforcement mechanisms, the trial court erred when it ordered Johnson to remit the costs from his criminal action through the fee schedule it created and included in his judgment entry of conviction. If Champaign County, or the clerk thereof, desires to enforce the reimbursement to which the trial court's findings entitle it, it must pursue civil execution collection proceedings. *Id.* at ¶ 12.

**{¶ 40}** Unlike court-appointed attorney's fees and costs, fines are punitive in nature. *State v. Swift*, 2d Dist. Montgomery No. 20544, 2005-Ohio-1599, ¶ 28. Under

R.C. 2947.14, if, as part of a sentence, the trial court orders an offender to pay a fine, but the offender fails to pay the fine, the court may hold a hearing pursuant to R.C. 2947.14(A) and (B).   At this hearing, the offender has the right to be represented by counsel and to testify and present evidence as to his ability to pay the fine. If the court determines at the hearing that the offender is able to pay the fine, this determination shall be supported by findings of fact that indicate the offender's income, assets, and debt, as presented by the offender, and the offender's ability to pay.   If the offender then fails to pay, the court may issue a warrant for the offender's arrest.   The court must then afford the offender another hearing "on the first regularly scheduled court day following the arrest," unless waived by the offender. R.C. 2947.14(C).   If the court then finds that the offender is still able to pay the fine but refuses, it may incarcerate the offender.   If the court chooses to incarcerate the offender, the court must give the offender credit against the fine at the rate of $50.00 per day.

{¶ 41} Accordingly, because the fines that were imposed upon Johnson at the time of sentencing were punitive in nature, the trial court was within its authority to include them in the repayment schedule it included in his judgment entry of conviction.   If Johnson was later discovered to be in arrears in regards to the payment of his fines at the scheduled rate of $50.00 per month beginning the second month after his release from prison, then the trial court can hold a hearing pursuant to R.C. 2947.14 in order to determine his ability and/or willingness to pay said fines.   However, the trial court must separate the amount of fines owed by Johnson from the amount of costs and attorney's fees because while the court can attempt to collect the former itself, the latter two must be collected through a civil proceeding brought by the clerk of courts or the State after

Johnson is released from prison.

{¶ 42} Johnson's third assignment of error is sustained in part and overruled in part.

{¶ 43} Johnson's third assignment of error having been sustained in part and overruled in part, we hereby modify the trial court's final judgment entry by vacating and excising only the words "costs" "and court appointed legal fees" from the "financial obligation payment schedule" to the extent that the schedule compels Johnson to make monthly payments toward his court-appointed counsel fees and costs in connection with his criminal case. The judgment of the trial court is therefore **affirmed** as modified.

. . . . . . . . . .

FAIN, J., concurs.

HALL, J., concurring:

{¶ 44} I agree that Appellant's sentence is not contrary to law and that the record supports the trial court's consecutive-sentence findings. I agree that the trial court properly disapproved shock incarceration and intensive-program prison. I also agree that the trial court could not impose an enforceable post-prison repayment schedule for court costs and for reimbursement of appointed-counsel fees. I write separately to comment on the standard of review applicable to sentencing and the majority opinion's indirect shifting of the burden to produce evidentiary support in the record for appellate review.

{¶ 45} At paragraph 14, the majority concludes: "We review [the] findings under the standard set forth in R.C. 2953.08(G)(2), which authorizes us to vacate Johnson's consecutive sentences if we clearly and convincingly find that the record does not support them. *See State v. Marcum*, Slip Opinion No. 2016-Ohio-1002." In my view, the holding

in *Marcum* allows a sentence to be vacated or modified "only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Id.* at ¶ 23. The difference is that the majority's quote is in the affirmative, requiring the State or the court to introduce information into the record to justify the sentence. The *Marcum* quote is in the negative. If the record does not contain information from which we can determine that the sentence is clearly wrong, then it stands, and we are without authority to adjust it. The majority's quote puts the burden on the State or the court, incorrectly in my view, to insure there is information in the record to justify the sentence. This distinction is now of more import given *Marcum's* application of the clearly-and-convincingly standard to all sentencing, not just to consecutive penalties. It is also particularly important with regard to sentencing following a plea where the record is often sparse, perhaps even where the defense or the court dispenses with a PSI report.

{¶ 46} I previously have written that "even a record that is largely silent is not clearly and convincingly contrary to a trial court's consecutive-sentencing determination unless there is substantial affirmative factual information in support of the defendant to conclude that the trial court is clearly wrong." *State v. Kay,* 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 27 (Hall, J., dissenting). I recognize our jurisprudence on this issue has been mixed, but in *State v. Withrow*, 2d Dist. Clark No. 2015-CA-24, 2016-Ohio-2884, a majority, not including this writer, adopted the sparse-record notion and further stated: "Therefore, the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." *Id.* at ¶ 38, citing *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, at ¶ 31, citing *State v. Venes*, 2013-

Ohio-1891, 992 N.E.2d 453, at ¶ 21. The *Withrow* majority also commented that "[t]he dissenting opinion in *Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, is correct in that the consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result. *Id.* at ¶ 26 (Hall, J., dissenting)." *Withrow*, ¶ 39.

**{¶ 47}** Regardless of my expressed concerns, in this case the trial court was meticulous in its findings, and the record decidedly supports the sentence imposed. Accordingly, I concur.

. . . . . . . . . . . . . . .

Copies mailed to:

Jane A. Napier
Andrew C. Schlueter
Hon. Nick A. Selvaggio