[Cite as *Dibert v. Carpenter*, 196 Ohio App.3d 1, 2011-Ohio-5691.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| DIBERT, | : | |
| | : | Appellate Case No. 2011-CA-09 |
| Appellant and Cross-Appellee, | : | |
| | : | Trial Court Case No. 2008-CV-01 |
| v. | : | |
| | : | |
| CARPENTER, Trustee, | : | (Civil Appeal from |
| . | : | Common Pleas Court) |
| | : | |
| Appellee and Cross-Appellant, et al. | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 4th day of November, 2011.

. . . . . . . . .

John A. Poppe, for appellant and cross-appellee.

Elsass, Wallace, Evans, Schnelle & Co., L.P.A., Stanley R. Evans, and R. Eric Sanders, for appellee and cross-appellant.

. . . . . . . . .

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Gerald Dibert, appeals from a summary judgment rendered against him on his claim that he was fraudulently induced to transfer real property from one trust in which he was a cotrustee and had an interest as a beneficiary to another trust in which he had an interest as a beneficiary but was not a cotrustee. He contends that the Champaign County Probate Court erred in determining that the claim was barred by the applicable statute

of limitations.

{¶ 2}   Defendant-appellee and cross-appellant, Cynthia Carpenter, contends that the probate court erred by denying her motion for partial summary judgment with regard to Dibert's claims for conversion.   She contends that there is no genuine issue of material fact with regard to these claims.

{¶ 3}   We conclude that the probate court was correct in its determination that the claim for fraud is barred by R.C. 2305.09.   We further find that Carpenter's claim must be dismissed for lack of a final, appealable order.   Accordingly, the judgment of the probate court is affirmed.

I

{¶ 4}   In 1975, Gerald Pickering conveyed property in Champaign County to his daughter and son-in-law, Jocelyn and Kenneth Dibert.   Pickering retained a life estate in the property.   In 1980, Pickering transferred his life-estate interest to the Diberts in exchange for a note, secured by a mortgage, in the amount of $271,671.33.

{¶ 5}   A month later, Pickering established a trust (the "Pickering Trust") designating himself as income beneficiary during his lifetime.   He funded the trust by assigning the note and mortgage to the trust.   Pursuant to the terms of the trust, and an amendment to the trust, the income from the trust was designated to go to his wife, Lucille, upon Pickering's death. When Lucille died, the trust designated Jocelyn and Kenneth Dibert as the income beneficiaries.   When both Lucille and the Diberts died, the trust corpus was to be distributed to Pickering's grandchildren, Gerald Dibert and Cynthia Dibert Carpenter.   Pickering died in 1981.

**{¶ 6}** Jocelyn Dibert died in 1989. Kenneth Dibert remarried. On March 12, 1991, Kenneth created a trust, designated as the Dibert Trust. It is unclear whether the trust instrument was prepared by attorney Roger Watson, attorney John Scouten, or both. The Dibert Trust was funded with the property and life estate that Pickering had conveyed to the Diberts and which was still subject to the mortgage lien. Kenneth was designated as income beneficiary during his lifetime. His second wife, Amelia Jane, was to be designated as income beneficiary upon his death. Upon the death of the second wife, Dibert's children, Gerald and Cynthia, were to share equally in the trust. Amelia Jane was appointed trustee. If Amelia Jane died, or no longer was able to serve as trustee, the trust appointed Gerald and Cynthia to serve as cotrustees.

**{¶ 7}** The Dibert trust contained the following language:

**{¶ 8}** "[T]he part for Donor's son, GERALD J. DIBERT, shall include: Donor's farm chattels (including grain, livestock, etc.) and Donor's farm real estate. In the event that the value of the afore-described property to be included in GERALD J. DIBERT'S part exceeds the value of his fifty percent (50%) overall distribution, then GERALD J. DIBERT shall have the option to purchase all of the remainder of such property having a value in excess of that which is placed in his trust, at the value of such property as established for Ohio Estate Tax purposes, provided that this option to purchase must be exercised within a period of ninety (90) days from the date of Donor's death." (Capitalization sic.)

**{¶ 9}** On April 15, 1991, Kermit Russell was appointed as successor trustee to the Pickering Trust. Kenneth Dibert died in October 1993. According to Gerald Dibert's deposition testimony, within 90 days of his father's death, in early 1994, he attempted to

exercise his right-to-purchase option but was told by attorney Roger Watson that he could not do so because the property had been placed into "a trust."

{¶ 10} On December 13, 1996, attorney Allen Maurice, as attorney for Kermit Russell, successor trustee to the Pickering Trust, sent a letter to Gerald Dibert and Cynthia Carpenter. The letter stated:

{¶ 11} "As you know, I am attorney for Kermit Russell, as Successor Trustee of the Trust set up by your grandfather, Gerald B. Pickering, on September 26, 1980. One of the assets of the Trust is a promissory note dated August 22, 1980 from your parents to your grandfather in the amount of $271,671.33, with interest at the rate of 6% per year. This note is secured by a mortgage from your folks to your grandfather covering all of your parents' farmland. There remains owing on this note and mortgage an amount in excess of $211,000.00.

{¶ 12} "Under the terms of your grandfather's Trust, all of the income from the assets of the Trust were to be paid to Lucille Pickering, surviving spouse of your grandfather. As I have explained to both of you, all payments to Mrs. Pickering were suspended during the period of time that payments were being made on the federal estate tax that was assessed in your grandfather's estate. Under the terms of the Trust, Mrs. Pickering was also given the right to reside in the home in Rosewood and have that property maintained.

{¶ 13} "All of the installments of estate tax in the Pickering Estate have been made. The estate tax is paid in full, and now Kermit Russell, as Successor Trustee, has the responsibility of seeing that the assets of the Pickering Trust are income producing and that the income be paid to Mrs. Pickering. No payments have been made on the promissory note

from the Kenneth Dibert Trust, and we are getting the impression that there is not money to do that.

{¶ 14} "Unless some method can be put in place whereby payments will resume on the promissory note, as mentioned above, we will have no other alternative than to proceed with a foreclosure on the note and mortgage. This is certainly not our desire, however, Kermit has distinct fiduciary duties under the terms of your grandfather's Trust, and he cannot continue to ignore them.

{¶ 15} "Please contact us by December 30th with your plan on how this indebtedness will be satisfied. If a viable plan is not in place by that date, we will have no other alternative than to proceed as outlined above."

{¶ 16} On August 29, 1997, Carpenter was appointed as successor trustee to the Pickering Trust.

{¶ 17} At some point, Gerald Dibert and Cynthia Carpenter were appointed as cosuccessor trustees of the Kenneth Dibert Trust. As cotrustees, they attempted to secure a loan to pay off the mortgage and note, but were unsuccessful. Thereafter, on May 10, 1999, Gerald Dibert and Carpenter, as "Co-Successor Trustees of the Kenneth A Dibert Trust" conveyed two parcels of land to the Pickering Trust.[1] The conveyance was effected by fiduciary deed, signed by Dibert and Carpenter, and it was properly notarized and filed of record. The fiduciary deed contained the following language: "This conveyance is subject to the right to purchase the above described real estate granted to Gerald A. Dibert as set forth in the Kenneth A. Dibert Trust, dated March 12, 1991."

---

[1] One of the parcels is located in Champaign County while the second parcel is located in Logan County.

{¶ 18} Lucille Pickering died on July 7, 2007. In November 2007, Gerald Dibert filed the lawsuit that is the subject of this appeal against Carpenter and attorney Allen Maurice in the Champaign County Court of Common Pleas, General Division. In January 2008, the matter was transferred to the probate division.

{¶ 19} In his complaint, Dibert alleges that in 1999, "at the insistence of Cynthia Sue Parcels nka Carpenter, successor trustee of the Kenneth Dibert Trust and successor trustee of the Pickering Trust, insisted that farms in Harrison Township and Champaign County and others in Logan County be conveyed from the Dibert trust to the Pickering Trust." Dibert further alleged that Carpenter "for her own benefit * * * insisted that the $271,000 had not been paid [to the Pickering Trust] and that it was [her] intention to repossess two of the farms in order to collect [the monies owed]." According to the complaint, Maurice "advised all parties that land in the Dibert Trust should be deeded to the Pickering Trust." Maurice was dismissed from the suit in January 2009 upon a finding that the claim against him, which sounded in malpractice, was not brought within the applicable statute of limitations. That dismissal is not a subject of this appeal.

{¶ 20} Count I of the complaint seeks an equitable accounting of the Pickering Trust. Count II makes a claim that Carpenter committed the tort of conversion of property of the Pickering Trust by "wrongfully exerting control over Trust assets for her own personal use." In Count III, Dibert alleges that Carpenter has been unjustly enriched by reason of using the assets of the Pickering Trust. Finally, in Count IV, Dibert seeks removal of Carpenter as trustee of the Pickering Trust.

{¶ 21} Carpenter filed a motion for partial summary judgment, in which she argued

that Dibert lacked standing and that he had not filed the action within the applicable statutes of limitation. Specifically, Carpenter argued that Dibert's complaint regarding the conveyance by fiduciary deed from the Dibert Trust to the Pickering Trust sounded in fraud and breach of fiduciary duty, both of which were barred by the applicable statutes of limitation. She also argued that Gerald Dibert's claim for conversion must fail as it was also barred by the applicable statute of limitations.

{¶ 22} The probate court denied Carpenter's motion as it related to standing. The court also overruled her motion as it related to the claims for conversion. However, the probate court granted the motion as it related to the claims regarding the conveyance of property from the Dibert trust to the Pickering trust, upon its finding that the statute of limitations for instituting the action had expired.

{¶ 23} Dibert appeals from the partial summary judgment rendered against him. In a cross-appeal, Carpenter contests the probate court's denial of partial summary judgment as it relates to the claims for conversion.

II

{¶ 24} Dibert's sole assignment of error states as follows:

{¶ 25} "The trial court erred when it determined that the statute of limitations bars his right to purchase the land which his father had intended him to receive at the termination of the Dibert trust following the death of the grantor and his widow."

{¶ 26} Dibert's complaint centers on the 1999 transfer of property by fiduciary deed from the Dibert trust to the Pickering trust and his allegation that the transfer was accomplished through fraud, breach of fiduciary duty, or both. Specifically, he claims that

Carpenter, as trustee of the Pickering trust, insisted on making the transfer and that Maurice induced him to believe that the provision in the fiduciary deed effecting the transfer, reserving to him the right to purchase option that had been set forth in the Dibert Trust, would guarantee his right to purchase the property.

{¶ 27} The evidence in the record establishes that Gerald Dibert was aware, and did not dispute, that the Dibert trust owed money to the Pickering trust; he disputes only the amount that was due at the time of the execution of the fiduciary deed transferring the property from the Dibert trust to the Pickering trust. He further admits that he and Carpenter attempted to obtain bank loans to satisfy the debt, but were not successful. He claims that Carpenter, acting as Pickering trust trustee, "insisted" that the monies be repaid or that she would have to foreclose on the property. The evidence further establishes that Dibert and Carpenter, acting as cotrustees of the Dibert trust, executed the fiduciary deed in order to satisfy that debt.

{¶ 28} There is no evidence that Carpenter acted improperly when she pursued, after her appointment as successor trustee, the repayment of the monies owed by the Dibert trust to the Pickering trust – of which she and Dibert were both beneficiaries. Nor is there any evidence that Carpenter improperly persuaded or coerced Dibert to make the transfer. In short, we can find no evidence of a breach of fiduciary duty in this regard.

{¶ 29} We next turn to the claim that Dibert was improperly induced to believe that the right-to-purchase clause in the fiduciary deed would protect his personal interest in the property. We first note that there is no allegation, or evidence, that Carpenter had anything to do with the drafting of this clause. In his deposition, Dibert testified that during the

preparation of the fiduciary deed that was executed and filed in May 1999, either Roger Watson or John Scouten had advised him of, and then presented to Allen Maurice, language to be used in the fiduciary deed to preserve this right-to-purchase option. However, according to Dibert, the language actually used in the deed was not what Watson or Scouten had suggested and prepared. Dibert claims that he signed the deed because he relied upon the assurance of attorney Allen Maurice that the language contained in the fiduciary deed would protect his right to purchase the property even after it was transferred to the Pickering trust. Dibert further claims that in September 2007, Maurice informed him that the option-to-purchase clause contained in the fiduciary deed was of no effect.[2]

{¶ 30} The probate court found that Dibert had been aware of the right-to-purchase option as early as 1994 and that he did not exercise it. The court further found that Dibert knew of the potential problem with attempting to exercise the right to purchase at the time he executed, as cotrustee, the fiduciary deed transferring the property from the Dibert trust to the Pickering trust in 1999. The court stated:

{¶ 31} "It is the Court's view that this claim sounds in fraud rather than a breach of fiduciary duty.

{¶ 32} " * * *

{¶ 33} "Given [Dibert's] knowledge of the right to purchase, his admitted failure to exercise the right, the fact that he had Watson and Scouten advising him on trust matters, that

---

[2] In a related lawsuit filed in Logan County, Dibert alleged that he attempted to exercise his option to purchase within 90 days of his father's death. See *Dibert v Watson*, Logan App. No. 8-09-02, 2009-Ohio-2098, ¶ 4. However, he further alleged that attorney Roger Watson told him that he could not exercise the option until the death of his father's second wife. Id. Dibert also alleged that Watson and attorney John Scouten advised him that he could exercise the option upon the death of the second wife and further that the option would remain in effect until that time. Id.

the right to purchase in the Dibert [trust] had lapsed by its own terms, and the final inclusion of protective language cited in the fiduciary deed was not agreed to by [Dibert's] advisors, one can only conclude that [Dibert] should have been alerted to the fact that the deed language was problematic. A reasonably prudent man should have made further inquiry as the appropriateness of the language and would have reconsidered the conveyance [Dibert] entered into.

{¶ 34} "Consequently, the Court is of the opinion that [Dibert] was placed on notice of a problem with the land transfer in 1999 and his failure to wait until 2007 to make a claim requires the application of [R.C.]Section 2305.09 and is now barred."

{¶ 35} We agree with the probate court that this allegation sounds in fraud. We further agree that the claim is barred by R.C. 2305.09(C), which sets forth a four-year statute of limitations for filing fraud claims. We further agree that the statute began to run when the parties executed the fiduciary deed, because Dibert knew that his advisors had told him that he could no longer execute the option to purchase the property that was purportedly being reserved in the fiduciary deed. Furthermore, although Dibert has alleged that he was refused permission to see the terms of the Pickering trust, of which he was a cobeneficiary but not a cotrustee, he has not alleged that he was prevented from seeing the terms of the Dibert trust, of which he was both a cobeneficiary and a cotrustee. His right to purchase the property, including the limitation that it had to be exercised within 90 days of his father's death, was a term of the Dibert trust. As a cotrustee of that trust, he was on constructive notice, at least, of the 90-day restriction, and therefore he was on constructive notice that his right to purchase had already expired when he signed the deed transferring the property from the Dibert trust to

the Pickering trust.

**{¶ 36}** Dibert's sole assignment of error is overruled.

III

**{¶ 37}** Carpenter's sole assignment of error on her cross-appeal is as follows:

**{¶ 38}** "The trial court erred in overruling Carpenter's motion for partial summary judgment as to plaintiff's claims against Carpenter for certain acts of conversion, as the evidence which Carpenter presented in support of her motion conclusively demonstrates that any action for conversion based upon such alleged acts is barred by the applicable statute of limitations."

**{¶ 39}** Carpenter appeals from the denial of her motion for partial summary judgment on Dibert's claim for conversion. She contends that there are no genuine issues of material fact regarding Dibert's claims for conversion and that she is therefore entitled to summary judgment on that claim.

**{¶ 40}** " 'The denial of a motion for summary judgment generally is considered an interlocutory order not subject to immediate appeal.' * * * Thus, a denial of summary judgment is not generally a final appealable order. 'This is because the denial of the motion does not determine the outcome of the case. The parties both still have the opportunity to prove their case at trial and a judgment in either party's favor is not precluded.' " (Citations omitted.) *Rhodes v. Paragon Molding, Ltd.*, Montgomery App. No. 23969, 2010-Ohio-6110, ¶ 32; *Doe v. Choices, Inc.*, Montgomery App. No. 21350, 2006-Ohio-05757, ¶ 38; *State ex rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23.

**{¶ 41}** Even with the disposition of the claim regarding the transfer of property, the

probate court's decision leaves the issues of equitable accounting, unjust enrichment, and conversion pending. Because the denial of the motion for partial summary judgment on the claim of conversion is not a final, appealable order, we are without jurisdiction to review it.

{¶ 42} Carpenter's cross-appeal is dismissed for lack of a final, appealable order.

IV

{¶ 43} Dibert's sole assignment of error having been overruled, the partial summary judgment rendered against him is affirmed. Carpenter's cross-appeal is dismissed for lack of a final, appealable order.

Judgment affirmed.

. . . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.