[Cite as *Dibert v. Carpenter*, 2018-Ohio-1054.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| GERALD DIBERT | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 2017-CA-17 |
| | : | |
| v. | : | Trial Court Case No. 2008-CV-01 |
| | : | |
| CYNTHIA S. CARPENTER | : | (Appeal from Family Court) |
| | : | |
| *Defendant-Appellee* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of March, 2018.

. . . . . . . . . .

GERALD DIBERT, 8415 State Route 245, DeGraff, Ohio 43318
    Plaintiff-Appellant-Pro Se

STANLEY R. EVANS, Atty. Reg. No. 0011933, KRISTINA M. MORRIS, Atty. Reg. No. 0082242, P.O. Box 499, Sidney, Ohio 45365
    Attorneys for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} This case is before us on the pro se appeal of Plaintiff-Appellant, Gerald Dibert, from an order requiring him to pay $25 per month, beginning in July 2017, to satisfy a judgment of $411.30 in court costs. The order also overruled various motions Dibert had filed, including a motion for recusal, a motion for an order appointing a new judge, and a motion to dismiss the show cause hearing.

{¶ 2} In support of his appeal, Dibert contends that the trial court committed plain error by proceeding without jurisdiction; that the court erred by proceeding with a show cause hearing when no contempt motion had been filed; that the court erred in refusing to correct the record; and that the trial judge erred by refusing to recuse herself when she had twice before filed orders of recusal.

{¶ 3} We conclude that the trial court erred in filing an order requiring Dibert to show cause why he should not be held in contempt, and in filing an entry reflecting that a show cause hearing for contempt had been held. Because court costs are a civil debt, the trial court could not file a show cause order seeking contempt, but, instead, was required to use only methods provided for the collection of civil judgments. Accordingly, the judgment of the trial court will be reversed in part, and this cause will be remanded to the trial court for further proceedings. In all other respects, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 4} This appeal is related to a probate action involving Dibert and Defendant-Appellee, Cynthia Carpenter, which has been before us on a number of prior occasions.

In discussing the factual background, we will refer only generally to two cases in which we issued opinions and will not include various decisions and entries that are referenced in the appellate opinions. The case's factual background is complicated and is not particularly relevant here, since the matters at issue occurred after the trial court entered a final judgment on the parties' substantive claims.

{¶ 5} In essence, this case involves two siblings, Dibert and Carpenter, who have, for years, been litigating issues regarding two trusts established by their grandfather in 1975. In November 2007, Dibert filed a complaint against Carpenter, individually, and in her capacity as a trustee. Carpenter responded by filing several counterclaims against Dibert in January 2008. *Dibert v. Carpenter*, 2017-Ohio-689, 85 N.E.3d 419, ¶ 14-15 (2d Dist.) (*Dibert II*). Nothing of particular note occurred until the trial judge (Judge Reisinger) recused herself and another newly-elected judge from the case shortly after Judge Reisinger assumed office in February 2009. The recusal was based on a conflict of interest, and a retired judge was appointed to hear the case. *Id.* at ¶ 18.

{¶ 6} In 2011, we considered Dibert's appeal and Carpenter's cross-appeal from interlocutory decisions of the trial court. We concluded that Dibert's claim for fraudulent inducement to transfer real property from one trust to another was barred by the statute of limitations. *See Dibert v. Carpenter*, 196 Ohio App.3d 1, 2011-Ohio-5691, 961 N.E.2d 1217, ¶ 35 (2d Dist.) (*Dibert I*). At that time, we also dismissed Carpenter's cross-appeal, which involved the trial court's denial of her motion for partial summary judgment on Dibert's claim for conversion. We concluded that the order denying summary judgment was not a final appealable order because such orders are interlocutory. In addition, issues for equitable accounting, conversion, and unjust enrichment were still pending.

*Id.* at ¶ 40-41.

{¶ 7} After the case was remanded, the parties reached agreement in November 2012 concerning Dibert's complaint, with Carpenter agreeing that she owed $120,000 to one of the trusts (the "Pickering Trust"). The trial court filed an agreed entry addressing distribution of the assets in that trust, and no appeal was taken. *Dibert II*, 2017-Ohio-689, 85 N.E.3d 419, at ¶ 24. Trial was then scheduled on Carpenter's counterclaims. *Id.* at ¶ 25. However, in June 2013, the assigned judge recused himself, and Judge Reisinger filed an order indicating that she would be the presiding judge for purposes of finalizing the mater. *Id.* at ¶ 26. In August 2013, Dibert's counsel raised questions about the judge's personal contact with litigants and/or persons close to the litigants; however, the request to recuse was withdrawn following a conference with the court. *Id.* at ¶ 27.

{¶ 8} Trial began before Judge Reisinger on October 22, 2013, at which time the court overruled Dibert's motion for leave to amend his answer to the counterclaims. The purpose of the amendment was to add claims relating to the other trust (the "Dibert Trust"). *Id.* at ¶ 31. During a second day of trial on October 31, 2013, the judge orally granted Dibert's motion to reconsider in part, and let Dibert file only his motion for leave, not his proposed amended answer. *Id.* at ¶ 32.

{¶ 9} During a third day of trial on November 27, 2013, it appeared that testimony might be required from Judge Reisinger's father. The court, therefore, called a recess to let the parties consider this issue. During the recess, Dibert filed his motion for leave to file the amended answer, and the court later orally overruled the motion. *Id.* at ¶ 33-34. After the recess, Dibert indicated that he intended to call the judge's father as a

witness; as a result, Judge Reisinger again recused herself to avoid any perception of a conflict of interest.   *Id.* at ¶ 35.

{¶ 10} A retired judge from another county was appointed to hear the matter, but before the certificate of assignment was filed in the trial court, Judge Reisinger issued entries outlining the events and oral rulings that had occurred on October 22 and 31, and November 27, 2013.   *Dibert II*, 2017-Ohio-689, 85 N.E.3d 419, at ¶ 36.   Subsequently, the assigned trial judge reviewed Dibert's motion for leave to file an amended answer, and overruled the motion in September 2014.   This was shortly before the scheduled trial date, but trial did not occur at that time.   *Id.* at ¶ 38-39.   In January 2015, the judge reviewed the chronology of proceedings and again affirmed the denial of Dibert's motion for leave to amend his answer.   However, the judge also concluded that Dibert should have been allowed to file his proposed answer and counterclaim.   The judge, therefore ordered that Dibert could file the document at any time before trial began on January 15, 2015.   *Id.* at ¶ 42.

{¶ 11} The trial was ultimately completed in February 2015, and the court entered judgment in May 2015 in favor of the successor of the Dibert Trust on four of the counterclaims against Dibert.   The judgment ordered Dibert to pay the trust a total of $287,786.32.   *Dibert II*, 2017-Ohio-689, 85 N.E.3d 419, at ¶ 2 and 43.   At the time judgment was rendered, Carpenter had withdrawn three counterclaims, and the court had dismissed several of her other counterclaims.   *Id.* at ¶ 43.

{¶ 12} After Dibert appealed from the judgment, we remanded the case on a limited basis to let the trial court consider Carpenter's motion for attorney fees.   On remand, the court awarded Carpenter $105,127 in attorney fees and $719.50 in

deposition costs. *Id.* at ¶ 45. When the case returned to our court, we affirmed the judgment of the trial court with respect to both the money judgment on the counterclaims and the award of attorney fees and deposition costs. *Id.* at ¶ 116. Our opinion was filed on February 24, 2017. We then overruled Dibert's motion for reconsideration of our opinion. *See Dibert v. Carpenter*, 2d Dist. Champaign No. 2015-CA-18 (Apr. 11, 2017) (overruling motion for reconsideration of our February 24, 2017 opinion).

{¶ 13} On May 26, 2017, Dibert appealed from our judgment to the Supreme Court of Ohio, and the case was docketed as Sup.Ct. Case No. 2017-0711. On January 31, 2018, the Supreme Court of Ohio declined to accept jurisdiction of Dibert's appeal. *See* 2018-Ohio-365. Dibert has filed a motion asking the Supreme Court to reconsider its decision to decline jurisdiction, which remains pending before the Supreme Court.

{¶ 14} The record certified to our court from the trial court in connection with the current appeal contains 35 docket entries, dated from November 10, 2015, through July 10, 2017. 26 of these entries are irrelevant, as they are dated prior to our decision of February 24, 2017 (and deal with matters like certifying the transcript for that particular appellate case). The first pertinent entry, Doc. #27, is a journal entry filed by Judge Reisinger on April 25, 2017. This entry states, in relevant part, that:

> Plaintiff, Gerald Dibert has failed to pay his outstanding Court costs in the above-referenced manner.
>
> Therefore, a show cause hearing is scheduled before Administrative Judge Lori L. Reisinger at the Champaign County Court of Common Pleas Courthouse, 200 North Main Street, Third Floor, Urbana, Ohio, on Tuesday, May 9, 2017, at 10:45 a.m. *to show cause why he should not be held in*

*contempt.*

*Gerald Dibert is ordered to appear at said hearing.*

If Gerald Dibert either pays $411.30 or establishes a payment plan

with the Clerk before May 9, 2017, the show cause hearing will be vacated.

\* \* \*.

\* \* \*

IT IS SO ORDERED.

(Emphasis added.)   Doc. # 27 (also labeled #123), Journal Entry, p.1.[1]

**{¶ 15}** On May 8, 2017, Dibert filed several pro se motions, including: (1) an objection to Judge Reisinger presiding and a request that she recuse herself; (2) a motion for an order appointing a new judge; (3) a motion to correct the record to reflect an entry dated January 15, 2015 on the docket and certify that a copy of Dibert's proposed answer and counterclaim was in the court's file; and (4) a motion to dismiss the show cause hearing based on lack of jurisdiction and failure to comply with requirements for filing contempt charges.   A few hours before the scheduled contempt hearing, the judge filed an entry indicating she would address all the pending motions at the hearing.

**{¶ 16}** A transcript of the May 9, 2017 contempt hearing has been filed.   Dibert appeared at the hearing without counsel, and no other parties to the case were present. Dibert objected to the court's use of a show cause order for civil costs, contending that

---

[1] As was noted, the docket sheet contains 35 entries.   However, the documents themselves do not bear the assigned docket numbers; instead, each document is numbered individually on each page, meaning that documents containing multiple pages have a different number on each page.   As a result, the Journal Entry filed on April 25, 2017 (a one-page document), is labeled "123," even though it is listed on the docket sheet as # 27.   To avoid confusion, we will refer only to the docket numbers listed on the docket sheet.

court costs are civil debts. In response, the judge stated that: "I didn't say it was for contempt. I'm showing cause why there's a court order that you pay costs and they have not been paid." Transcript of May 9, 2017 Proceedings, p. 3. After further discussion, Dibert again asked the court to dismiss the show cause hearing, citing *Galluzzo v. Galluzzo*, 2d Dist. Champaign No. 2012-CA-43, 2013-Ohio-3647. At this point, the trial judge commented that "the Supreme Court had made different rules" since our decision, and that *Galluzzo* "was no longer good law." Transcript at p. 9. The court then stated that "We'll take as little as $25 a month, if you would like." *Id.*

{¶ 17} Although Dibert asserted that he could not afford to pay the costs, the court eventually obtained his agreement to pay $25 per month on the costs, beginning July 15, 2017, and continuing on the 15th of each month thereafter, until the debt was paid. *Id.* at pp. 11-12. The judge also stated during the hearing that she was only there to collect the court costs, and that the trial court had done, with respect to the record, everything the court of appeals had requested. This was in response to the motion to correct the record. *Id.* at p. 5.

{¶ 18} On May 11, 2017, the trial judge filed an entry stating that "the matter came on to be heard for a show cause hearing as to why Gerard Dibert should not be *held in contempt for failing to follow the Court's May 17, 2015 Order, ordering him to pay costs.*" (Emphasis added.) Doc. #33, Journal Entry, p. 1. The judge further noted that Dibert had agreed to pay $25 per month beginning July 15, 2017, until the costs were paid in full. In addition, the judge overruled the motions and objections Dibert had filed, but did not provide any further reasoning for these rulings.

{¶ 19} Dibert timely appealed, pro se, from the judgment filed on May 11, 2017.

## II.  Alleged Error Concerning Show Cause Order

**{¶ 20}** Dibert's First Assignment of Error states that:

Judge Lori L. Reisinger Committed Plain Error by Proceeding Without Jurisdiction When She Entered a Journal Entry Ordering Appellant to Appear and Show Cause to Explain Why Appellant Should Not Be Held in Contempt for Non-Payment of Court Costs.

**{¶ 21}** Under this assignment of error, Dibert contends that the trial court erred by filing a contempt citation when that is an improper procedure for collecting civil costs. Dibert further contends that the court ignored case law and erroneously represented that our decision in *Galluzzo,* 2d Dist. Champaign No. 2012 CA 43, 2013-Ohio-3647, had been overruled.   According to Dibert, the cases that *Galluzzo* cited, are, in fact, contained in a document the Supreme Court of Ohio updated in May 2017.   The document that Dibert cites is entitled "Bench Card References: Collection of Court Costs and Fines in Adult Trial Courts."[2]

**{¶ 22}** Carpenter has filed a brief, and notes that the trial court's ruling on collection of court costs does not affect her.   Brief of Defendant-Appellee, Cynthia Sue Carpenter, p. 5, fn. 3.   Nonetheless, Carpenter contends that Dibert waived his right to appeal, because he entered into an agreement to pay the court costs.   In support of her position, Carpenter cites cases dealing with oral settlement agreements entered into by parties to a case.   *See, e.g., Mullins v. Zelnick*, 2d Dist. Miami No. 82-CA-17, 1983 WL 4881 (Apr.

---

[2] We found this document on the website of the Supreme Court of Ohio.   *See* http://www.supremecourt.ohio.gov/Publications/JCS/finesCourtCosts_Ref.pdf., accessed on January 8, 2018.   On the website, this document is dated "(May 2017)."

12, 1983). Although Carpenter is not affected by the collection issue, we conclude that we should address this issue before considering the merits of this assignment of error.

{¶ 23} In *Mullins*, we held that "[w]here the parties in an action enter into an oral settlement agreement in the presence of the court, such agreement constitutes a binding contract." *Id.* at *2, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St. 2d 36, 285 N.E. 2d 324 (1972), paragraph one of the syllabus. The fact that a settlement agreement may be binding does not mean that the right to appeal has been waived; a party could still file an appeal, but the appeal would likely not succeed. Consistent with this point, *Mullins* simply indicated that settlement agreements between parties are binding and may not be avoided by a party's failure to sign a consent judgment entry. *Mullins* at *2. We did not state in *Mullins* that the appeal had been waived. We also noted that the party challenging the settlement agreement in *Mullins* did not file a motion to vacate the agreement. *Id.* In contrast, *Spercel* had held that a settlement agreement between parties is binding and may not be rescinded unless one of the parties files a motion to set aside the agreement. *Spercel* at 41.

{¶ 24} In *Spercel*, the Supreme Court of Ohio also commented on the facts of that case. Specifically, almost two years after the settlement, defense counsel notified the plaintiff that counsel was filing a motion asking the trial court to enter a nunc pro tunc entry concerning the settlement. At that time, the plaintiff knew about alleged fraud the defendant had committed in connection with the settlement. However, the plaintiff did not assert the fraud, even though the nunc pro tunc entry dismissing the case was not filed until about two months after the plaintiff was notified. *Id.* at 36-37.

{¶ 25} Instead of asserting fraud, the plaintiff filed a petition about a year and a half

after the nunc pro tunc entry was filed, and asked the trial court to vacate the settlement. *Id*. at 37. Under these circumstances, the Supreme Court of Ohio concluded that the plaintiff was estopped from asserting the fraud in a motion to vacate. *Id*. at 41.

{¶ 26} An example of waiver occurred in *Sanit. Commercial Services, Inc. v. Shank*, 57 Ohio St.3d 178, 566 N.E.2d 1215 (1991), where the Supreme Court of Ohio held that a right to appeal may validly be waived as part of a written settlement agreement between litigating parties. In *Shank,* a county and a landfill operator entered into a written settlement agreement with the Ohio Environmental Protection Agency ("OEPA"). *Id*. at 179. In exchange for the OEPA's agreement to reinstate the county to a list of approved health enforcement districts and to let the landfill operator continue to operate, the operator and county agreed to abide by various conditions. *Id*.

{¶ 27} In particular, the county agreed to dismiss its current appeal with prejudice, and the parties agreed that if the landfill operator failed to meet milestone dates, the Director of Environmental Protection could elect to remove the county from the approved list and could also issue enforcement findings and orders requiring the operator to deal with the violations. *Id*. Finally, the county waived its right to appeal its removal from the approved list, and the operator waived the right to challenge the lawfulness and reasonableness of the Director's findings and orders, either on the agency level or in a court having competent jurisdiction. *Id*.

{¶ 28} After further violations occurred, the Director ordered the operator to shut down, and the operator appealed to the Environmental Board of Review ("EBR"). The EBR dismissed the appeal, concluding that the operator had waived the right to appeal. The court of appeals subsequently held that the right to bring irregularities before the EBR

and courts was too important to be waived by agreement. However, the Supreme Court of Ohio disagreed. The court held that a party can validly waive a discretionary appeal, and did so waive the right in the case before it, based on sufficient consideration exchanged between the litigants. *Id.* at 180-183.

{¶ 29} The cases we just discussed differ from the present case for obvious reasons. In the first place, the "settlements" were between litigants, not a litigant and the court. Furthermore, where waiver occurred, the parties bargained for and obtained consideration for the waiver. This is not comparable to situations in which a party is ordered to appear in court on purported contempt charges. More importantly, Dibert objected prior to trial and during the hearing, before the judge indicated that his objections were not valid. Under the unique circumstances here, one could not conclude that Dibert waived his objections by agreeing to make payments.

{¶ 30} A more appropriate analysis is whether Dibert's appeal of this issue is moot, given that he agreed to make payments on the court costs. Issues are moot when they lack practical significance and, instead, present academic or hypothetical questions. (Citations omitted.) *State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, 73 N.E.3d 396, ¶ 55. As a general rule, if a party voluntarily pays a final judgment in full, a related appeal is moot because there is no actual controversy. (Citations omitted.) *Poppa Builders, Inc. v. Campbell*, 118 Ohio App.3d 251, 253, 692 N.E.2d 647 (2d Dist.1997). The reason for the general rule is that reversing a trial court judgment following full voluntary payment would not offer an appellant any relief. *Id.*

{¶ 31} In *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990), the Supreme Court of Ohio held that:

It is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot. " 'Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment.' "

*Id.* at 245, quoting *Rauch v. Noble*, 169 Ohio St. 314, 316, 159 N.E.2d 451 (1959). (Other citation omitted.)

{¶ 32} In *Blodgett*, the appellant argued that her appeal should not be terminated because she had signed a satisfaction of the lower court judgment and had taken its benefits due to economic duress. *Id.* The Supreme Court of Ohio was not persuaded, declining "to accept the proposition that if an appellant executes a satisfaction of judgment merely because she cannot afford to wait for the outcome of an appeal, that satisfaction of judgment may be subsequently avoided." *Id.* at 246.

{¶ 33} After our decision in *Poppa Builders*, "we have noted the unique circumstances in *Blodgett*, wherein the wife accepted the full amount awarded to her in the trial court's judgment and decree of divorce and signed a satisfaction of judgment while an appeal was pending." (Citations omitted.) *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 28. In *Janis*, we stressed that we were not persuaded by the appellee's "argument that substantial satisfaction of a judgment (rather than full satisfaction) can render an appeal moot, or that tendered payment can constitute satisfaction." *Id.* *Compare In re Hards*, 175 Ohio App.3d 168, 2008-Ohio-630, 885

N.E.2d 980, ¶ 44 (11th Dist.) (noting appellants' agreement that their appeal of whether the trial court could order payment of court costs to an attorney/commissioner was moot. This was because they had paid court costs to the probate court's satisfaction before the contempt hearing was held); *Gabriel v. Gabriel*, 6th Dist. Lucas No. L-08-1303, 2009-Ohio-1814, ¶ 12 (payment in full of guardian ad litem fees that was reflected in the record mooted appellant's argument that trial court erred in using contempt proceedings to enforcement payment of fees).

{¶ 34} In *KeyBank Natl. Assn. v. Mazer Corp.*, 188 Ohio App.3d 278, 2010-Ohio-1508, 935 N.E.2d 428 (2d Dist.), we also refused to find an appeal moot because ownership of or interest in property being disputed (several hundred thousand pounds of paper) had been sold and the proceeds had been placed in escrow pending appeal. *Id.* at ¶ 53. Notably, we said that "[t]he statements of the parties indicate that these matters occurred after the judgment that is on appeal, and they are not properly before us." *Id.*

{¶ 35} In the current case, if any payments took place, they occurred after judgment was rendered, and are not reflected in the record. Furthermore, even if Dibert made any payments, the judgment would not have been satisfied by its own terms for more than 16 months, or in October or November 2018. While mootness of an appeal should not be based on how long an appellate court takes to resolve an appeal, the fact is that there is no evidence in the record that the judgment for court costs has been fully satisfied. As a result, the trial court could still require Dibert to appear for another "show cause" hearing. Accordingly, we conclude that the issue of whether the trial court properly attempted to collect court costs is not moot.

{¶ 36} As was noted, the trial court ordered Dibert into court by using a "show

cause" order, which ordered Dibert to show cause why he should not be held in contempt for failure to pay court costs. R.C. 2705.02 outlines various acts, including disobedience of a court judgment, that are considered contempt of court, and R.C. 2705.03 provides that in such cases, "a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. This section does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings."

{¶ 37} When Dibert appeared and challenged the court's authority to proceed in this manner, the court told Dibert that the case upon which he had relied (*Galluzzo*, 2d Dist. Champaign No. 2012-CA-43, 2013-Ohio-3647) was no longer good law. Despite the plain wording in the order, the court also denied during the hearing that it was attempting to hold Dibert in contempt. And finally, contrary to the court's comments during the hearing, the order that was filed thereafter indicated that "the matter came on to be heard for a show cause hearing as to why Gerard Dibert should not be held *in contempt* for failing to follow the Court's May 17, 2015 Order, ordering him to pay costs." (Emphasis added.) Doc. #33, Entry, p. 1.

{¶ 38} The Supreme Court of Ohio has said that " '[t]he duty to pay court costs is a civil obligation arising from an implied contract.' " *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 20, quoting *Strattman v. Studt*, 20 Ohio St.2d 95, 253 N.E.2d 749 (1969), paragraph six of the syllabus, *overruled on other grounds, State v. Beasley,* Ohio Sup.Ct. Slip Opinion No. 2018-Ohio-493, ¶s 263-265. In *Joseph*, the court stressed "[t]hat court costs are a civil obligation is true in both criminal and civil

cases: 'By being involved in court proceedings, any litigant, by implied contract, becomes liable for the payment of court costs if taxed as a part of the court's judgment. A judgment for costs in a criminal case is a civil, not a criminal, obligation, and may be collected only by the methods provided for the collection of civil judgments.' " *Id.*, quoting *Strattman* at 103.

{¶ 39} In *Strattman*, the court emphasized that, as it had "stated in 1900, 'money obligations arising upon contract, express or implied, and judgments rendered thereon, are debts within the purview of Section 15 of the (Ohio) Bill of Rights * * *.' " *Strattman* at 103, quoting *Second National Bank of Sandusky v. Becker*, 62 Ohio St. 289, 56 N.E. 1025 (1900), paragraph one of the syllabus. *Accord Joseph* at ¶ 20.

{¶ 40} We have also long adhered to the position that:

"[A]lthough trial courts have the authority to enforce their orders through contempt proceedings, R.C. 2705.02, an order to pay court costs is essentially a judgment on a contractual debt where the court is the creditor and the party ordered to pay court costs is the debtor. As such, the creditor, i.e., the court, can collect only the money it is due by the methods provided for the collection of civil judgments."

*State v. Kloeker*, 2016-Ohio-7801, 73 N.E.3d 1167, ¶ 13 (2d Dist.), citing *Galluzzo*, 2d Dist. Champaign No. 2012-CA-43, 2013-Ohio-3647, at ¶ 6-7. We, therefore, have held specifically that " '[i]f Champaign County, or the clerk thereof, desires to enforce the reimbursement to which the trial court's findings entitle it, it must pursue civil execution collection proceedings.' " *Kloeker* at ¶ 14, quoting *State v. Springs*, 2015-Ohio-5016, 53 N.E.3d 804, ¶ 12 (2d Dist.). *Accord State v. Eubanks*, 2d Dist. Champaign No. 2015-

CA-39, 2017-Ohio-2681, ¶ 10-11; *State v. Johnson*, 2016-Ohio-5160, 69 N.E.3d 176, ¶ 38 (2d Dist.); *State v. Brandyberry*, 2d Dist. Champaign No. 2015-CA-30, 2017-Ohio-4320, ¶ 18, citing *Johnson* at ¶ 41-43; *State v. Ragland*, 2d Dist. Champaign No. 2015-CA-36, 2017-Ohio-2783, ¶ 13.

**{¶ 41}** This is not a new concept.   *See, e.g., State v. Lamb*, 163 Ohio App.3d 290, 2005-Ohio-4741, 837 N.E.2d 833, ¶ 13 (2d Dist.).   Although the above cases (other than *Galluzzo*) involve criminal defendants, the rule as to collection of a civil debt for court costs is not different for civil actions.   Accordingly, the trial court erred in using a show cause order and the threat of contempt to collect costs in a civil case.   Furthermore, the trial court's comments to Dibert were erroneous.   In this regard, the following exchange occurred:

MR, DIBERT:   And I would like to bring to the court's attention the case of *Galluzzo* versus *Galluzzo*, 2013 Ohio 3647, and which deals with the very issue of the court costs.

THE COURT:   And?

MR. DIBERT:   And I move this court to dismiss it for now.

THE COURT:   On what grounds?

MR. DIBERT:   Well on the grounds of the Ohio 2013 3647, which deals with this very issue of court costs and show cause hearing.

THE COURT:   And?   You understand that if you present case law to the court you have to say why your case is the same as that case and what that case ruled.

MR. DIBERT:   Well, I didn't – the appeals court ruled in Galluzzo's favor.

THE COURT:   In what way?

MR. DIBERT:   In the way I believe it was even done in this court of to do services outside for his work, had to do work for the court or work for – community service.   And they ruled that he didn't have to do his community service or he couldn't be charged.

THE COURT:   And you understand that the Supreme Court has made different rules since then.   Are you aware of that?

MR. DIBERT:   No, I didn't know that.

THE COURT:   So, that case is no longer good law.

MR. DIBERT:    Okay.   I didn't know that.   I had just got some notes and thought that –

THE COURT:    We'll take as little as $25 a month, if you would like.

Transcript of Proceedings, pp. 8-9.

{¶ 42} *Galluzzo* was a civil case in which the Champaign County Common Pleas Court had filed a show cause order because Galluzzo had failed to pay court costs. *Galluzzo*, 2d Dist. Champaign No. 2012-CA-43, 2013-Ohio-3647, at ¶ 1.   At the hearing, Galluzzo stated that he was indigent, and the court responded that it would substitute community service for the payment of court costs.   When Galluzzo objected, stating that court costs are a civil debt, the court overruled his objections and ordered him to perform 40 hours of community service.   *Id.* at ¶ 3-4.

{¶ 43} On appeal, Galluzzo presented two assignments of error: (1) that the trial court erred in using its coercive powers to collect costs, without statutory authority; and (2) that the court could not impose community service to work off costs.   *Id.* at ¶ 5.

**{¶ 44}** We agreed with *both* grounds of alleged error, not just the ground related to community service. Quoting *State v. Glasscock*, 91 Ohio App.3d 520, 632 N.E.2d 1328 (4th Dist.1993), we noted that " 'trial courts may only collect court costs "by the methods provided for the collection of civil judgments." ' " *Galluzzo* at ¶ 6. We further stated that " 'an order to pay court costs is essentially a judgment on a contractual debt where the court is the creditor and the party ordered to pay court costs is the debtor. As such, the creditor, i.e., the court, can collect only the money it is due by the methods provided for the collection of civil judgments.' " *Id.* at ¶ 7, quoting *State v. Ellis*, 2d Dist. Montgomery No. 22189, 2008-Ohio-2719, ¶ 20, which in turn quotes *In re Buffington*, 89 Ohio App.3d 814, 816, 627 N.E.2d 1013 (6th Dist.). (Other citation omitted).

**{¶ 45}** We, therefore, concluded that "the trial court erred in employing a contempt proceeding to collect a civil judgment, and that it lacked authority to order [Galluzzo] to perform community service." *Galluzzo*, 2d Dist. Champaign No. 2012-CA-43, 2013-Ohio-3647, at ¶ 8.

**{¶ 46}** The fact that the trial court did not impose community service in the case before us is irrelevant. The court could not file a show cause order, indicating the party summoned was to appear in court to show cause why he should not be held in contempt, and then state during the hearing that the court was not holding a contempt hearing. Furthermore, despite the court's indication that it was not holding a contempt hearing, the judgment entry filed thereafter indicated that Dibert had appeared at a hearing to show cause why he should not be held in contempt and that he had agreed to a schedule for paying costs. The clear implication from this order is that Dibert could be summoned to court again on a show cause order for contempt if he failed to comply with the payment

schedule.

{¶ 47} This was simply a way of doing indirectly what we prohibited in *Galluzzo* and other cases. If the court wished to collect court costs, it was required to do so using appropriate methods for collecting judgments in civil cases.

{¶ 48} Furthermore, contrary to the trial court's implication, our holding in *Galluzzo* with respect to imposing community service in civil cases to collect civil judgments has not been altered in any way by the Supreme Court of Ohio. We have found nothing in our research to suggest that, or that we have cast any doubt on *Galluzzo*.

{¶ 49} Previously, in *Lamb*, we had noted that R.C. 2947.23(A)(1)(a) expressly permits trial courts to order criminal defendants to perform community service to satisfy judgments for court costs. *Lamb*, 163 Ohio App.3d 290, 2005-Ohio-4741, 837 N.E.2d 833, at ¶ 11. We questioned the applicability of this part of the statute, which took effect only in March 2003, to the case then under consideration. *Id.* at ¶ 12, fn.6. However, we assumed for purposes of our discussion that the trial court acted properly in converting the defendant's costs to community service. *Id.* at ¶ 12. We then said that "we nevertheless conclude that he cannot be jailed for failure to work off a civil debt such as court costs. To jail a defendant for failure to pay a civil obligation unquestionably would violate Section 15, Article I of the Ohio Constitution, which provides that '[n]o person shall be imprisoned for debt in any civil action.' " *Id.*

{¶ 50} Subsequent amendments have not significantly altered the pertinent parts of R.C. 2947.23. For example, Sub. H.B. 283, 2008 Ohio Laws File 114, left the prior language in R.C. 2947.23(A)(1)(a) intact, but included "any costs under section 2947.231 of the Revised Code," as costs that could be included in a defendant's sentence. A 2012

revision retained the same language in subsection (A)(1), but renumbered it to add subsection (A)(1)(b), which addressed situations where a court fails to notify a defendant during sentencing of the court's ability to order community service for payment of costs. *See* Am. Sub. S.B. 337, 2012 Ohio Laws File 131; *State v. Smith*, 131 Ohio St.3d 297, 2012-Ohio-781, 964 N.E.2d 423, syllabus (community service notification in R.C. 2947.23(A)(1) is mandatory).

{¶ 51} Another bill passed in 2012 added language to R.C. 2947.23(C) to state that trial courts retain "jurisdiction to waive, suspend, or modify the payment of the costs of prosecution, including any costs under section 2947.231 of the Revised Code, at the time of sentencing or at any time thereafter." Sub. H.B. 247, 2012 Ohio Laws File 169. The most recent amendment eliminated the former limitation of community service to "not more than 40 hours per month" in R.C. 2947.23(A)(1)(a)(i), but otherwise retained the pertinent language. *See* Am. Sub. S.B. 143, 2014 Ohio Laws File 140.

{¶ 52} As a result, there has been no dispute for many years that trial courts have the ability, in criminal cases, to impose costs of prosecution on criminal defendants and to order community service as a substitute. Issues have existed concerning whether costs could be assessed against indigent defendants, or whether the clerk of courts could attempt to collect these costs from such defendants. *See State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 14-15 (holding that courts may assess costs to indigent defendants, and the clerk of courts may attempt to collect costs through various methods. The court refrained, however, from deciding if several civil avenues mentioned in the case, like accessing a defendant's prison account, were legal in connection with indigent defendants).

{¶ 53} In *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, the court considered the issue it had refrained from deciding in *White*, i.e., what methods of collection are available to collect costs from indigent criminal defendants. *Id.* at ¶ 1. After considering the matter, the court stated that "although costs in criminal cases are assessed at sentencing and are included in the sentencing entry, costs are not punishment, but are more akin to a civil judgment for money. Ultimately then, for purposes of collection, an indigent criminal defendant is really no different from any other indigent who owes a debt. Therefore, we hold that the state may use any collection method that is available for collection of a civil judgment for money, as well as the procedures set out in R.C. 5120.133 if the defendant is incarcerated." *Id.* at ¶ 16. *Accord State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 232 (rejecting claim that money cannot be taken from prison account to satisfy court costs).

{¶ 54} After *Threatt*, we have continued to reject inappropriate methods of attempting to collect court costs from defendants, or indirect means of doing what a court cannot directly do. *See, e.g., State v. Jamison*, 2d Dist. Montgomery No. 23211, 2010-Ohio-965, ¶ 38-44 (noting that trial courts cannot use confiscated property to pay court costs without following the forfeiture provisions in R.C. Chapter 2981); *Ragland*, 2d Dist. Champaign No. 2015-CA-36, 2017-Ohio-2783, at ¶ 14 (trial court erred by including court costs in fee schedule it created and included in judgment entry of conviction; "trial court did not have authority to enforce monetary obligations *except through civil enforcement mechanisms*.") (Emphasis sic.).

{¶ 55} While the above cases pertain to collection of costs in criminal actions, the point is that nothing has changed, either in the jurisprudence of our own court or that of

the Supreme Court of Ohio to warrant the trial court's statement that *Galluzzo* is no longer good law. As a result, the trial court erred in this regard as well.

**{¶ 56}** Based on the preceding discussion, the First Assignment of Error is sustained. Our decision is not intended to indicate that trial courts may not assess court costs or that Dibert is not required to pay the court costs that were apparently assessed (the entry assessing costs is not in the record before us). Instead, trial courts must collect judgments for court costs using appropriate civil enforcement mechanisms rather than issuing show cause orders. This is consistent with R.C. 2101.23, which restricts the probate court's power to issue contempt orders by stating that: "If a person neglects or refuses to perform an order or judgment of a probate court, *other than for the payment of money*, the person is guilty of contempt of court, and the judge shall issue a summons directing the person to appear before the court within two days from the service of the summons and show cause why the person should not be punished for contempt." (Emphasis added.)

### III.  Lack of Written Charge of Contempt

**{¶ 57}** Dibert's Second Assignment of Error states that:

> The Champaign County Family Court Judge Reisinger Erred When She Failed to Dismiss the Show Cause Hearing Upon Written Motion for Lack of a Filed Charge of Contempt, Which Is a Violation of Due Process and Therefore a Failure of Jurisdiction.

**{¶ 58}** Under this assignment of error, Dibert contends that the trial court erred by failing to comply with the requirements for show cause orders, which require the court to

file a charge in writing and provide various procedural safeguards. Because we have already concluded that the trial court erred in issuing a show cause order for contempt, this assignment of error is overruled as moot.

IV. Motion to Correct the Record

{¶ 59} Dibert's Third Assignment of Error states that:

In the Alternative, If this Court Decides that Judge Reisinger Had Jurisdiction as a Result of the Order of April 25, 2017, Then Plain Error Was Committed When She Denied the Motion to Correct the Record.

{¶ 60} Under this assignment of error, Dibert contends that even if the trial court had jurisdiction to hear the contempt order, the court committed plain error by refusing to correct the record to certify that a proposed answer and counterclaim was in the court's file. The trial court's only response to this issue at the hearing was that the court had done everything that the court of appeals told it to do. In addition, the court's entry provided no further analysis, as the court simply overruled all of Dibert's pending motions.

{¶ 61} As an initial point, our ruling with respect to the court's show cause order does not mean that the trial court lacked jurisdiction over the matter. Subject-matter jurisdiction concerns a court's power to entertain and adjudicate a particular class of cases. (Citations omitted.) *Morrison v. Steiner*, 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972). The Supreme Court of Ohio has said that:

A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. A court's jurisdiction over a particular case refers to the court's authority to proceed

or rule on a case that is within the court's subject-matter jurisdiction. This latter jurisdictional category involves consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void.

(Citations omitted.) *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19.

**{¶ 62}** As the court noted in *Kuchta*, common pleas courts are constitutionally created and are courts of general jurisdiction with subject matter jurisdiction over all legal and equitable matters that are not denied to the court. (Citation omitted.) *Id.* at ¶ 20. Probate courts have more limited jurisdiction, and "are permitted to exercise only the authority granted to them by statute and by the Ohio Constitution." *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 11. *See also Keith v. Bringardner*, 10th Dist. Franklin No. 07AP-666, 2008-Ohio-950, ¶ 12. However, a probate court does have "the power at law and in equity to 'dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code.' " *Bringardner* at ¶ 12, quoting R.C. 2101.24(C).

**{¶ 63}** Furthermore, even though cases have been appealed, trial courts retain jurisdiction over judgments and proceedings in aid of their judgments unless supersedeas bonds are posted or stays are granted. *Howard v. Howard*, 2d Dist. Montgomery No. 11479, 1989 WL 109744, *2 (Sept. 19, 1989), citing *State, ex rel. Klein v. Chorpening*, 6 Ohio St.3d 3, 4, 450 N.E.2d 1161 (1983).

**{¶ 64}** The record before us does not indicate that Dibert obtained a stay of a

judgment awarding costs, and the trial court, therefore, had jurisdiction to take steps to execute on the judgment. While the court erred in its method of execution, that does not mean that the court lacked jurisdiction over the matter.

{¶ 65} Turning now to the merits, Dibert's claim, as noted, is that the trial court should have corrected the record to indicate that the court's file contained a copy of a proposed amended answer and counterclaim that Dibert filed.

{¶ 66} Our prior opinion considered an assignment of error that Dibert raised regarding the denial of his motion for leave to amend his answer. *See Dibert II*, 2017-Ohio-689, 85 N.E.3d 419, at ¶ 98-107. In discussing this matter, we commented that the proposed answer and counterclaim were not part of the record. *Id.* at ¶ 103-104. We further noted that the first page of a proposed amended answer contained in an appendix to Dibert's brief ("A-19") indicated that the document had been filed on January 15, 2015, at 8:39 a.m. *Id.* at ¶ 103. We assume this is the document in question.

{¶ 67} After considering the issue, we found that the trial court did not abuse its discretion by denying the motion to amend. We noted that when the trial court overruled Dibert's motion to amend, the case had been pending for seven years and the court previously had held two days of trial. *Id.* at ¶ 107. We further stressed that Dibert "offered no explanation why he waited until just before trial to raise his claims." *Id.*

{¶ 68} At this point, there would be no point in "correcting" the record, as we have already ruled on the denial of the motion to amend. Any further litigation of this issue would be barred under both the claim preclusion and issue preclusion or collateral estoppel aspects of res judicata. Claim preclusion "holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out

of the transaction or occurrence that was the subject matter of the previous action." (Citations omitted.) *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). Issue preclusion "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." (Citations omitted.) *Id.* Accordingly, the trial court did not err in overruling the motion to correct the record. The Third Assignment of Error, therefore, is overruled.

## V. Recusal

**{¶ 69}** Dibert's Fourth Assignment of Error states as follows:

In the Alternative, If this Court Decides that Judge Reisinger Had Jurisdiction as a Result of the Order of April 25, 2017, Then Plain Error Was Committed When She Failed to Recuse, Upon Motion, Filed on May 8, 2017[,] Which Should Have Been Considered as a Motion to Recuse, When She had Previously Recused Twice in this Case.

**{¶ 70}** Dibert contends under this assignment of error that the trial judge should have recused herself from further participation in the case based on her two prior recusals. As was noted, Dibert filed a motion concerning this point. However, he did not discuss it during the hearing. Consequently, we conclude that he waived any error. *See, e.g., Blust v. Lamar Advertising of Mobile, Inc.*, 183 Ohio App.3d 478, 2009-Ohio-3947, 917 N.E.2d 373, ¶ 37 (2d Dist.). We could consider the issue under the plain error

doctrine, which applies "only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 71} Judicial bias "implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus. We have previously held that "the disqualification of a judge of a court of common pleas for bias and prejudice is confided to the sole determination of the Chief Justice of the Supreme Court of Ohio, or a justice of the Ohio Supreme Court designated by the Chief Justice to perform that function." *Hanselman v. Hanselman*, 2d Dist. Montgomery No. 21615, 2007-Ohio-183, ¶ 92, citing Ohio Constitution, Article IV, Section 5(C).

{¶ 72} In *State v. Evans*, 2d Dist. Montgomery No. 27178, 2017-Ohio-8184, we commented that "[w]e lack authority to determine whether a trial court judge should be disqualified for bias or should recuse himself. Some courts have recognized a distinction, however, where the question is not prospective disqualification or recusal but whether the judge's conduct during trial deprived the defendant of his due process rights." *Id*. at ¶ 10, fn.3, citing *State v. Payne*, 149 Ohio App.3d 368, 2002-Ohio-5180, 777 N.E.2d 333, ¶ 11 (7th Dist.). (Other citation omitted.)

{¶ 73} Assuming that we could consider the matter, we see no basis for finding

either error or plain error. "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. (Citation omitted.)

**{¶ 74}** In his brief, Dibert fails to suggest why the trial judge should have recused herself, or how she was biased towards him. He also failed to suggest in his most recent appeal that the judge's "decisions were affected by a conflict of interest or bias." *Dibert II*, 2017-Ohio-689, 85 N.E.3d 419, at ¶ 96 (referring to Judge Reisinger). Although the trial judge erred in the method she chose for executing on the judgment, an incorrect interpretation of the law does not constitute bias. Accordingly, the Fourth Assignment of Error is overruled.

## VI. Conclusion

**{¶ 75}** Dibert's First Assignment of Error having been sustained, his Second Assignment of Error having been overruled as moot, and his Third and Fourth Assignments of Error having been overruled, the judgment of the trial court as to the show cause order and schedule for payment of costs is reversed, and this cause will be remanded to the trial court for further proceedings. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.


Copies mailed to:

Gerald Dibert
Stanley R. Evans
Kristina M. Morris
Hon. Lori L. Reisinger